Electronically Filed
Intermediate Court of Appeals
28939
31-MAY-2012
09:16 AM

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

ANNE SUE ISOBE and GLENN NOBUKI MURAKAMI,
Plaintiffs-Appellants,
v.
MICHAEL DAVID SAKATANI and CHRISTINE MARIE SAKATANI,
individually and as husband and wife;
808 DEVELOPMENT LLC, an administratively
terminated Hawaii limited liability company;
KRISTY SHIN WELLS; LLOYD JAMES HOCHBERG, JR.,
Defendants-Appellees,
and
JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10;
DOE CORPORATIONS 1-10; DOE ENTITIES 1-10;
and DOE GOVERNMENTAL UNITS 1-10,
Defendants.

NO. 28939

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 06-1-1879)

MAY 31, 2012

FOLEY, PRESIDING JUDGE, FUJISE and GINOZA, JJ.

OPINION OF THE COURT BY GINOZA, J.

This appeal is brought by Plaintiffs-Appellants Ann Sue Isobe (Isobe) and Glenn Nobuki Murakami (Murakami) (collectively Plaintiffs-Appellants) challenging the rulings by the Circuit Court of the First Circuit (circuit court)[1] granting partial dismissal and then summary judgment in favor of Defendant-Appellant James Hochberg (Hochberg). Hochberg, an attorney, represented parties adverse to Plaintiffs-Appellants in two prior legal proceedings. Arising from those circumstances, Plaintiffs-Appellants assert claims against Hochberg in this action for slander of title (Count I), abuse of process (Count II), and malicious prosecution (Count III).

Following its rulings in favor of Hochberg, the circuit court granted Hochberg's motion pursuant to Rule 54(b) of the Hawai'i Rules of Civil Procedure (HRCP) for certification and entry of final judgment on the claims asserted against him.[2] An Amended Final Judgment was entered regarding those claims.

In this appeal, Plaintiffs-Appellants Isobe and Murakami assert the following points of error:

(1) The circuit court erred by misconstruing the opinion of the Hawai'i Supreme Court in *808 Development, LLC v. Murakami*, 111 Hawai'i 349, 141 P.3d 996 (2006) and holding that Plaintiffs-Appellants were precluded from pursuing claims against attorney Hochberg for slander of title, abuse of process, or malicious prosecution for initiating and litigating a mechanic's lien application that was later dismissed.

(2) the circuit court erred in applying a litigation privilege to the filing of expunged notices of pendency of action (NOPAs), thus barring the slander of title, abuse of process, and malicious prosecution claims against Hochberg based on the alleged filing of those NOPAs.

---

[1] The Honorable Eden Elizabeth Hifo presided.

[2] Other claims remained in the case against the other defendants.

(3) the circuit court committed reversible error:

(a) by applying the wrong standard of proof in summary judgment proceedings with respect to the Count of malicious prosecution, (b) by placing the burden of proof upon the Appellants opposing the motion, (c) by abusing its discretion by construing a motion for summary judgment which was based exclusively upon the law as a motion for summary judgment based upon facts, and (d) by staying the action while at the same time entertaining and deciding partially on the facts an opposing motion for summary judgment on that Count.

For the reasons set forth below, we hold that: (1) claim preclusion and issue preclusion do not apply to bar the claims asserted against Hochberg; (2) an absolute litigation privilege applies to provide immunity for Hochberg from the slander of title claim; (3) no litigation privilege applies for the abuse of process and malicious prosecution claims; (4) the allegations in the First Amended Complaint do not support a claim for abuse of process and thus dismissal of that claim is warranted; and (5) as to the malicious prosecution claim, dismissal and summary judgment are appropriate as to certain aspects of that claim, but not in its entirety.

## I.  Case Background

The claims against Hochberg stem from: his representation of Michael David Sakatani (Sakatani) and Christine Marie Sakatani (collectively, the Sakatanis) and 808 Development LLC (808 Development) in *Hogg v. Murakami, et al.*, Civil No. 03-1-1712 (Foreclosure Action); and his representation of 808 Development in *808 Development LLC v. Murakami, et al.*, M.L. No. 04-1-0002 (Mechanic's Lien Action).  Plaintiffs-Appellants Isobe and Murakami were adverse parties to Hochberg's clients in both the Foreclosure Action and the Mechanic's Lien Action.

Plaintiffs-Appellants' original Complaint based their claims against Hochberg on allegations that: (1) Hochberg filed the Mechanic's Lien Action on behalf of 808 Development and engaged in various acts of misconduct in the course of that litigation; and (2) Hochberg aided and abetted 808 Development's

improper filing of two NOPAs (also referred to as *lis pendens*), one in the Foreclosure Action (First NOPA) and one while the Mechanic's Lien Action was on appeal (Second NOPA), both of which were later expunged.

In their First Amended Complaint,[3] in addition to the claims originally asserted, Plaintiffs-Appellants alleged further factual allegations against Hochberg and expanded the basis for the claims to Hochberg's alleged instigation and prosecution of the Foreclosure Action.

A.  **Allegations In The Complaint**

In their original Complaint, Plaintiffs-Appellants lay out their alleged dispute with Hochberg's clients, the Sakatanis and 808 Development, as well as their claims against Hochberg and Kristy Shin Wells (Wells).[4]  They contend *inter alia* that in 2001, they accepted Michael Sakatani and 808 Development's offer to construct their residence on property located in Kahala, Honolulu for $1,830,500.  During construction, they allege Michael Sakatani requested security for monies he claimed were due to 808 Development and thus Murakami gave Sakatani a draft promissory note in the amount of $700,000 in favor of 808 Development and a draft mortgage on the subject property (Fourth Mortgage) in favor of Sakatani as security for the promissory note.  Plaintiffs-Appellants allege, however, there was a contemporaneous written understanding, memorialized on May 2, 2002 and executed by Sakatani and Murakami, that the $700,000 promissory note would not be enforceable until an audit was completed and the actual amount still owing was determined by a C.P.A.  Plaintiffs-Appellants contend that, contrary to the

---

[3]  The First Amended Complaint was filed the same day that Hochberg's motion to dismiss was heard by the circuit court.

[4]  Plaintiffs-Appellants named the Sakatanis, 808 Development, Wells and Hochberg as defendants in the instant lawsuit.  The only claims at issue in this appeal, however, are those asserted against Hochberg.

May 2, 2002 agreement, Sakatani immediately recorded the Fourth Mortgage in the Bureau of Conveyances which became a lien on the property.[5] Plaintiffs-Appellants further allege that soon thereafter, on or about July 2, 2002, the Sakatanis assigned the Fourth Mortgage to Joseph Elio Spadaro, to whom the Sakatanis allegedly owed money.

The Complaint alleges that 808 Development lost its contractor's license on September 30, 2002, and that thereafter:

> the Sakatanis and Wells, *aided and abetted by Hochberg*, sought to extort monies from the Plaintiffs by maliciously applying financial pressure on the Plaintiffs by preventing the Plaintiffs from refinancing Plaintiffs' various short-term mortgages on the subject property senior to said $700,000 [sic] fraudulent $700,000 mortgage invalidly notarized by Wells, forcing the Plaintiffs into a series of threatened foreclosure sales.

(Emphasis added).

With regard to the Mechanic's Lien Action, the Complaint alleges that: 808 Development filed that action on January 16, 2004 based on a construction agreement, claiming a statutory lien in the amount of $1,830,500 less payments made; a hearing was continued at the insistence of 808 Development, with Hochberg arguing he needed more time to look for documentation although he was unable to provide any documentation of detailed construction invoices or to prove that 808 Development had complied with written lien disclosure requirements under Hawaii Revised Statutes (HRS) § 444-25.5 (Supp. 2003); and at a hearing on March 2, 2004, the circuit court granted a motion dismissing the Mechanics Lien Action because 808 Development had not complied with the written lien disclosure requirements mandated by HRS § 444-25.5 and *Hiraga v. Baldonado*, 96 Hawaiʻi 365, 31 P.3d 222 (App. 2001).

---

[5] The Complaint also contends that, contrary to the signatures appearing on the Fourth Mortgage and supposedly witnessed/attested to by notary public Wells, neither Isobe or Murakami signed the Fourth Mortgage before Wells. The Complaint further alleges that Isobe's signature on the Fourth Mortgage and the promissory note are forgeries.

With regard to the Foreclosure Action, the Complaint asserts that action was initiated against Isobe and Murakami by three mortgage holders from whom they had borrowed money to acquire and construct their residence -- Jim Hogg, Joseph E. Spadaro, and John Nelson Spadaro -- who were suing because construction on the residence had been delayed and abandoned by 808 Development after losing its contractor's license, causing most of those mortgages to mature unpaid. The Complaint alleges that, in addition to the application for the mechanic's lien, 808 Development and the Sakatanis asserted claims against Isobe and Murakami in the Foreclosure Action on January 5, 2004 for the "identical $1,830,500.00 worth of construction claims[.]" Moreover, the Complaint alleges, 808 Development filed a NOPA on January 16, 2004, the First NOPA, thus complicating the Plaintiffs-Appellants' attempts to resolve the foreclosure case by refinancing.

The Complaint alleges that Plaintiffs-Appellants retired the mortgage debt owed to Jim Hogg and while working out settlement terms with Joseph E. Spadaro and John Nelson Spadaro to terminate the Foreclosure Action, pay off another debt, and completely refinance the mortgages on their residence, Plaintiff-Appellants filed a motion seeking to expunge 808 Development's NOPA "which was otherwise blocking all already signed settlements." According to the Complaint, at a hearing on October 12, 2004, the court indicated it saw no basis for 808 Development's NOPA, but gave Hochberg additional requested time to submit supplemental papers, and that thereafter "Hochberg had to concede that he had erroneously claimed that 808 [Development] had a right to file [the NOPA.]" Hochberg allegedly made the identical claims in defending the NOPA that he had made in defense of 808 Development's mechanic's lien application.

The Complaint alleges that on October 28, 2004, after a judgment was signed dismissing the Mechanic's Lien Action, the

circuit court in the Foreclosure Action ordered the First NOPA immediately expunged. However, it is alleged that approximately four hours after the circuit court's oral ruling expunging the First NOPA in the Foreclosure Action, 808 Development filed an identical NOPA (the Second NOPA) on the same day in the Hawai'i Supreme Court, where an appeal had been taken in the Mechanic's Lien Action. The Complaint alleges that the Second NOPA forced further protracted litigation in the Foreclosure Action, where Plaintiffs-Appellants had allegedly entered into final written settlement agreements within the past two weeks with Joseph E. Spadaro and John Nelson Spadaro, which was allegedly known by the Sakatanis and Hochberg. The Complaint alleges that, although the Hawai'i Supreme Court eventually ordered the Second NOPA expunged, the delay resulted in a foreclosure decree in favor of John Spadaro such that Plaintiffs-Appellants had to purchase the property at the foreclosure sale and, moreover, Plaintiffs-Appellants had to enter new and further settlement arrangements with Joseph E. Spadaro to prevent him from similarly foreclosing.

The Complaint also alleges that thereafter, Plaintiffs-Appellants Isobe and Murakami prevailed in the appeal that had been taken by 808 Development in the Mechanic's Lien Action, as set forth in the supreme court's opinion in *808 Development*.

The Complaint alleges Plaintiffs-Appellants' efforts to refinance were further blocked by the $700,000 mortgage recorded by the Sakatanis. Plaintiffs-Appellants thus allege they filed a petition in Land Court to expunge the mortgage, which was still pending.

The Complaint alleges that, as of the time the Complaint was filed, the validity of the $700,000 mortgage remained unadjudicated and that proceedings in the Foreclosure Action remained pending.

As a result of the alleged acts of, *inter alia*, Hochberg, the Plaintiffs-Appellants alleged various damages since

the filing of the Foreclosure Action and the Mechanic's Lien Action.

B.    **Allegations In The First Amended Complaint**

The First Amended Complaint added one paragraph containing forty subparagraphs of various and repetitive allegations, all specific to Hochberg.  This complaint added specific allegations that Hochberg acted with malice, with certain intentional purposes and ulterior motives, and with the intent and ulterior motive of causing substantial financial damage and injury to Plaintiffs-Appellants unrelated to the merits of his clients' cases.  The First Amended Complaint further specified Hochberg's alleged actions related to the Foreclosure Action and the Mechanic's Lien Action.[6]

------

[6]  As to the Foreclosure Action, the First Amended Complaint added allegations *inter alia* that Hochberg instigated and prosecuted the Foreclosure Action with full knowledge that he was making false representations by: alleging the Sakatani parties were owed construction costs without supporting documentation; by alleging the Sakatani parties held a valid $700,000 mortgage, knowing it had been improperly notarized; alleging the Sakatani parties held a valid $700,000 note, knowing there was no documentation for such debt; alleging he did not have sufficient time to retain handwriting experts when he had an expert report with negative findings that he kept hidden; alleging he needed more time for trial or arbitration based on misrepresentations about his construction accounting expert; alleging the Sakatani parties were entitled to file a *lis pendens*; and alleging to the arbitrator in the Foreclosure Action that he had a non-waivable conflict with the Sakatani parties requiring his withdrawal due to the filing of the complaint in the instant action.  The First Amended Complaint also added allegations that Hochberg made knowingly unsubstantiated settlement demands in the Foreclosure Action.

As to the Mechanic's Lien Action, the First Amended Complaint added allegations, *inter alia* that Hochberg instigated and prosecuted the Mechanic's Lien Action with full knowledge that he was making false representations by: alleging the Sakatani parties were entitled to a mechanic's lien, knowing the legal requirements were not met and as an afterthought claiming he was seeking to modify existing law; and misrepresenting that an unnamed attorney had copies of certain records which he needed more time to obtain.  The First Amended Complaint also added allegations that Hochberg instigated and prosecuted the NOPA in the Mechanic's Lien Action knowing he was making false representations that the Sakatani parties were entitled to file the NOPA.

Finally, the First Amended Complaint also added allegations that Hochberg knowingly made representations in the Land Court action "pertaining to where a certain $300,000 was deposited" that were contradictory to representations made in the Foreclosure Action and the Mechanic's Lien Action.

C.    Proceedings Before the Circuit Court

Plaintiffs-Appellants Isobe and Murakami filed their Complaint on October 30, 2006.

On December 7, 2006, Hochberg filed a Motion to Dismiss the Complaint, asserting that all claims against him should be dismissed. Plaintiffs-Appellants opposed the motion to dismiss and a hearing was held on January 3, 2007. The morning of the hearing, Plaintiffs-Appellants filed their First Amended Complaint. At the hearing, the circuit court orally granted the motion to dismiss in part, explaining that it would not grant dismissal to the extent the claims arose from the filing of the two NOPAs. On February 13, 2007, the circuit court entered its written order. As to each of the three causes of action asserted against Hochberg, the circuit court granted partial dismissal:

> to the extent that such Counts and/or claims arise out of and are based upon a mechanic's lien application and proceedings in *808 Development, LLC v. Glenn Nobuki Murakami, et al.*, M.L. No. 04-1-0002, based upon the doctrines of claim preclusion, res judicata and/or collateral estoppel and the Hawaii Supreme Court decision in *808 Development, LLC v. Glenn Nobuki Murakami, et al.*, 111 Hawai'i 349, 141 P.3d 996 (2006). The Motion is GRANTED with prejudice with respect to such claims notwithstanding the filing of Plaintiffs' First Amended Complaint on January 3, 2007, since any additional allegations as to such claims are futile.

On February 7, 2007, Hochberg filed a motion for summary judgment on the remaining claims against him, which he framed as the causes of action for slander of title, abuse of process, and malicious prosecution *arising from the filing of the two NOPAs*. The circuit court granted the motion in its entirety. With respect to the remaining aspects of the slander of title and abuse of process claims, the circuit court granted summary judgment for Hochberg based on its determination that a litigation privilege precluded those claims. With respect to the remaining aspects of the malicious prosecution claim, the circuit court held that Hochberg's declaration in support of the summary judgment motion was the only evidence as to why the NOPAs were

9

filed and therefore there were no genuine issues of material fact as to the required element of malice.

On April 26, 2007, the circuit court entered its written order granting Hochberg's motion for summary judgment.

On December 27, 2007, the Amended Final Judgment was entered as to the claims against Hochberg.

On January 7, 2008, Plaintiffs-Appellants timely appealed from the Amended Final Judgment.

## II. Standards of Review

### A. Motion to Dismiss

We review the circuit court's ruling on the motion to dismiss *de novo*. *Kamaka v. Goodsill Anderson Quinn & Stifel*, 117 Hawai'i 92, 104, 176 P.3d 91, 103 (2008).

> "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief." *Dunlea v. Dappen*, 83 Hawai'i 28, 32, 924 P.2d 196, 200 (1996) (citations omitted), *overruled on other grounds by Hac v. Univ. of Hawai'i*, 102 Hawai'i 92, 73 P.3d 46 (2003). This court must, therefore, "view a plaintiff's complaint in a light most favorable to him or her in order to determine whether the allegations contained therein could warrant relief under any alternate theory." *Id.* (citation omitted). Consequently, "in reviewing the circuit court's order dismissing the plaintiffs' complaint in this case, our consideration is strictly limited to the allegations of the complaint, and we must deem those allegations to be true." *Id.* (citation omitted).

*Kahala Royal Corp. v. Goodsill Anderson Quinn & Stifel*, 113 Hawai'i 251, 266, 151 P.3d 732, 747 (2007).

### B. Motion for Summary Judgment

We review a circuit court's grant of summary judgment *de novo*. *Id.* (citation omitted).

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the

> non-moving party. In other words, we must view all of the
> evidence and the inferences drawn therefrom in the light
> most favorable to the party opposing the motion.

*Id.* (quoting *Price v. AIG Hawai'i Ins. Co.*, 107 Hawai'i 106, 110,

111 P.3d. 1, 5 (2005)).

## III. Discussion

### A. Claim Preclusion and Issue Preclusion

In granting Hochberg's motion to dismiss in part, the

circuit court dismissed all three of the asserted claims *to the*

*extent that they arose out of the mechanic's lien application and*

*the proceedings in the Mechanic's Lien Action* (except the filing

of the Second NOPA). The circuit court based its ruling on

"claim preclusion, res judicata and/or collateral estoppel" given

the supreme court's opinion in the Mechanic's Lien Action, *808*

*Development*. In that prior litigation, Plaintiffs-Appellants'

motion for sanctions under HRCP Rule 11 had been rejected.[7]

Considering their point of error and the arguments they

point to having made in the circuit court, Plaintiffs-Appellants

essentially take issue with the partial dismissal of their claims

based on the doctrines of "claim preclusion, res judicata and/or

collateral estoppel." We agree with Plaintiffs-Appellants that

dismissal of their claims on these grounds was not proper.

As expressed by the Hawai'i Supreme Court:

It is well-settled in our jurisdiction that

> [r]es judicata, or claim preclusion, and
> collateral estoppel, or issue preclusion, are
> doctrines that limit a litigant to one
> opportunity to litigate aspects of the case to
> prevent inconsistent results and multiplicity of
> suits and to promote finality and judicial
> economy. Claim preclusion and issue preclusion
> are, however, separate doctrines that involve
> distinct questions of law.

---

[7] The request for sanctions under HRCP Rule 11 had been asserted
"against 808 Development and its attorney." *808 Development*, 111 Hawai'i at
353, 363-65, 141 P.3d at 1000, 1010-12.

> *Bremer v. Weeks*, 104 Hawai'i 43, 53, 85 P.3d 150, 160 (2004)
> (internal quotation marks, citations, brackets, and footnote
> omitted).

*Exotics Hawai'i-Kona, Inc. v. E.I. Dupont De Nemours & Co.*, 104 Hawai'i 358, 364-65, 90 P.3d 250, 256-57 (2004) (brackets in original, footnote omitted).[8]

Claim preclusion "prohibits a party from relitigating a previously adjudicated *cause of action*." *Bremer v. Weeks*, 104 Hawai'i 43, 53, 85 P.3d 150, 160 (2004) (emphasis added) (citation and internal quotation marks omitted). On the other hand, "[i]ssue preclusion applies to a subsequent suit between the parties or their privies on a *different* cause of action and prevents the parties or their privies from relitigating *any issue* that was actually litigated and finally decided in the earlier action." *Id.* at 54, 85 P.3d at 161 (citation and internal quotation marks omitted).

In the instant action, the circuit court relied upon both claim preclusion and issue preclusion in its partial grant of dismissal. We conclude, however, that neither doctrine applies given the claims and issues that were litigated and decided in the Mechanic's Lien Action and the claims asserted against Hochberg in this case.

### 1. Claim Preclusion

The party asserting claim preclusion has the "burden of establishing that (1) there was a final judgment on the merits, (2) both parties are the same or in privity with the parties in the original suit, and (3) the claim decided in the original suit is identical with the one presented in the action in question." *Id.* at 54, 85 P.3d at 161.

Hochberg's motion to dismiss asserted that because the supreme court had rejected Isobe and Murakami's request for

---

[8] We will refer *infra* to claim preclusion (instead of res judicata) and issue preclusion (instead of collateral estoppel).

sanctions under HRCP Rule 11 in *808 Development*, the claims against him in this case for slander of title, abuse of process, and malicious prosecution were precluded.

In *808 Development*, the supreme court addressed Isobe and Murakami's contention under HRCP Rule 11 that "808 Development's lien application was frivolous, wholly lacking in any factual or legal support." 111 Hawai'i at 364, 141 P.3d at 1011 (internal quotation marks and brackets omitted). In that case, the circuit court denied Isobe and Murakami's request for Rule 11 sanctions on the grounds that 808 Development had argued for a good faith extension of the law. *Id.* at 353, 141 P.3d at 1000. The supreme court, in turn, held that the circuit court had not erred in denying the Rule 11 motion. *Id.* at 365, 141 P.3d at 1012.

Claim preclusion does not apply to bar Plaintiffs-Appellants Isobe and Murakami's claims against Hochberg in the instant case. First, the motion for sanctions under HRCP Rule 11 was not a "claim" for which there was a "judgment on the merits." *C.f.*, *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990) ("[T]he imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate."); *Cohen v. Lupo*, 927 F.2d 363, 365 (8th Cir. 1991) ("Rule 11 sanctions must be sought by motion in a pending case; there can be no independent cause of action instituted for Rule 11 sanctions.") (citation omitted); *Robinson v. Eng*, 148 F.R.D. 635, 640 (D. Neb. 1993).

Second, even if an HRCP Rule 11 motion could be construed as a "claim," the claims asserted in this case are not "identical" with the HRCP Rule 11 motion that was litigated in the Mechanic's Lien Action. The differences are underscored by

comparing the elements for the claims asserted in this case with the requirements for HRCP Rule 11 sanctions.

*Slander of title* has been discussed in prior Hawai'i appellate opinions, but not yet formally adopted. We now recognize it as a common law tort in Hawai'i and adopt the following generally recognized elements to establish a claim for slander of title:

> (1) ownership of or interest in the property by the plaintiff; (2) falsity of the words published; (3) malice of the defendant in publishing the false statements; (4) publication to some person other than the owner; (5) publication in disparagement of plaintiff's property or the title to it; and (6) special damages proximately resulting from such publication.

50 Am. Jur. 2d *Libel and Slander* § 530 (2006); *C.f. B & B Inv. Grp. v. Gitler*, 581 N.W.2d 17, 20 (Mich. Ct. App. 1998) ("To establish slander of title at common law, a plaintiff must show falsity, malice, and special damages, i.e., that the defendant maliciously published false statements that disparaged a plaintiff's right in property, causing special damages.") (citations omitted); *Kensington Dev. Corp. v. Israel*, 407 N.W.2d 269, 272 (Wis. Ct. App. 1987).

With regard to a cause of action for *abuse of process*, there are two essential elements: "(1) an ulterior purpose and (2) a wilful act in the use of the process which is not proper in the regular conduct of the proceeding." *Young v. Allstate Ins. Co.*, 119 Hawai'i 403, 412, 198 P.3d 666, 675 (2008) (citation omitted).

With regard to a cause of action for *malicious prosecution*, there are three essential elements: "(1) that the prior proceedings were terminated in the plaintiffs' favor, (2) that the prior proceedings were initiated without probable cause, and (3) that the prior proceedings were initiated with malice." *Myers v. Cohen*, 67 Haw. 389, 391, 688 P.2d 1145, 1148 (1984) (citations omitted).

On the other hand, the supreme court considered Isobe and Murakami's assertions under HRCP Rule 11[9] that the lien application was frivolous, and whether the circuit court properly rejected sanctions because 808 Development had argued for a "good faith extension of the law[.]" 111 Hawaiʻi at 365, 141 P.3d at 1012. Although the HRCP Rule 11 motion may have involved some overlapping considerations that could be relevant to particular elements of claims in this case, the Rule 11 motion was not *identical* to the claims or causes of action asserted against Hochberg in this case.

---

[9] The relevant portions of HRCP Rule 11 were quoted in *808 Development*, as follows:

> (b) *Representations to court*. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleadings, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.
>
> (c) *Sanctions*. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

111 Hawaiʻi at 364, 141 P.3d at 1011 (emphasis in original). In its quote of the rule, the supreme court emphasized its focus on section (b)(2) as the alleged basis for sanctions.

Moreover, because HRCP Rule 11 is patterned after and substantially similar to Federal Rules of Civil Procedure (FRCP) Rule 11, we are guided by authorities addressing and interpreting FRCP Rule 11. *See Gap v. Puna Geothermal Venture*, 106 Hawai'i 325, 341, 104 P.3d 912, 928 (2004). The Advisory Committee Notes for the 1993 amendments to FRCP Rule 11 state that "Rule 11 is not the exclusive source for control of improper presentation of claims, defenses, or contentions[,]" and further expressly advises that "*Rule 11 does not preclude a party from initiating an independent action for malicious prosecution or abuse of process.*" Fed. R. Civ. P. 11, Advisory Committee Notes (1993 Amendments) (emphasis added). On January 1, 2000, HRCP Rule 11 was amended to incorporate, in almost identical language, the 1993 amendments to FRCP Rule 11.

Like its federal counterpart, HRCP Rule 11 serves a purpose that is distinct from the tort claims asserted in this case. The Advisory Committee Notes for the 1993 amendments to FRCP Rule 11 also state that "the purpose of Rule 11 sanctions is to deter rather than to compensate[.]" *Id.; see also Canalez v. Bob's Appliance Serv. Ctr., Inc.*, 89 Hawai'i 292, 303, 972 P.2d 295, 306 (1999). Courts from other jurisdictions have generally concluded that FRCP Rule 11, or similar rules, are not a substitute for tort claims like malicious prosecution. *See Bus. Guides v. Chromatic Commc'ns. Enters.*, 498 U.S. 533, 553 (1991) (rejecting the argument "that [FRCP] Rule 11 creates a federal common law of malicious prosecution" and stating that "[t]he main objective of the Rule is not to reward parties who are victimized by litigation; it is to deter baseless filings and curb abuses."); *Plus Intern., Inc. v. Pace*, 689 So.2d 160, 162 (Ala. Civ. App. 1996) (an award or denial of sanctions under a statute similar to FRCP Rule 11 did not have claim preclusion effect in subsequent malicious prosecution action); *Gordon v. Marrone*, 590 N.Y.S.2d 649, 654-55 (N.Y. Sup. Ct. 1992), *aff'd*, 616 N.Y.S.2d 98

(N.Y. App. Div. 1994) (holding that a court rule similar to FRCP Rule 11 does not obviate or replace the common law tort of malicious prosecution, noting the differences in the purpose and the relief afforded under each).

Therefore, the rejection of Plaintiffs-Appellants' HRCP Rule 11 motion in the Mechanic's Lien Action does not bar, under the doctrine of claim preclusion, the claims asserted herein for slander of title, abuse of process, and malicious prosecution.

### 2. Issue Preclusion

The party asserting issue preclusion must establish that:

> (1) *the issue decided in the prior adjudication is identical to the one presented in the action in question;* (2) there is a final judgment on the merits; (3) the issue decided in the prior adjudication was essential to the final judgment; and (4) the party against whom [issue preclusion] is asserted was a party or in privity with a party to the prior adjudication.

*Bremer*, 104 Hawai'i at 54, 85 P.3d at 161 (emphasis added) (citation omitted) (brackets in original). The parties raise no dispute regarding the last three requirements. However, they disagree as to the first requirement, that is, whether the HRCP Rule 11 issues decided by the supreme court in the Mechanic's Lien Action can be construed as identical to issues required to prove slander of title, abuse of process, and malicious prosecution.

As to the slander of title and malicious prosecution claims, Hochberg argues that the supreme court's ruling on the HRCP Rule 11 motion -- upholding the determination that 808 Development made a good faith argument for the extension of the law and that 808 Development's actions in the Mechanics Lien Action were not frivolous -- "precludes a finding of malice" which is a required element for these claims. As to the abuse of process claim, Hochberg contends that there can be no finding that there was a misuse of process given the supreme court's ruling and thus that claim must fail as well. Hochberg therefore

argues that all three claims were properly dismissed to the extent that they arise from the mechanic's lien application and the proceedings in the Mechanic's Lien Action.

In the Mechanic's Lien Action, Isobe and Murakami argued that 808 Development's lien application was frivolous because:

> (1) 808 Development was "allowed months of extra time to hunt for a signed written [bond and lien] disclosure" and failed to provide it at the hearing; (2) when confronted with the ICA's holding in *Hiraga*, it failed to address it in its reply; (3) when confronted with the express statutory requirements of HRS § 444-25.5 at the March 2, 2004 hearing, 808 Development's counsel "claimed that he knew where written bonding and lien rights disclosures signed by [Owners] could be found," yet he failed to produce them; and (4) "808 Development LLC is no longer operating and is merely a shell[;] [t]hus, unless Rule 11 sanctions are issued, 808 [Development] and its counsel will escape any consequences for [their] litigation abuse."

*808 Dev.*, 111 Hawaiʻi at 364, 141 P.3d at 1011 (brackets in original).

The supreme court rejected these arguments and explained the basis for its ruling as follows:

> As previously mentioned, the probable cause hearing was scheduled for a little over one month after service of the lien application, *i.e.*, forty days. Thus, Owners' suggestion that 808 Development had "*months* of extra time" to search for the purported amended contract is somewhat exaggerated. In addition, the circuit court denied Owners' motion for Rule 11 sanctions based on its finding that 808 Development had argued for a "good faith extension of the law set forth" in *Hiraga*. In addition, 808 Development's failure to discuss *Hiraga* does not render its arguments frivolous because *Hiraga* promotes strict adherence to the requirements of the relevant statutes as they relate to a lien application, whereas 808 Development's arguments centered on why the court should exempt it from the strict statutory requirements. Moreover, 808 Development took the position that Owners did not need the required notice and disclosures because of their sophistication and knowledge of lien and bonding issues. Thus, 808 Development's failure to produce the amended contract does not render its arguments frivolous as they were not premised on the existence of the purported amended contract. Lastly, there is nothing in the record to suggest that the circuit court "clearly exceeded the bounds of reason" in refusing to sanction 808 Development. Accordingly, we hold that the circuit court did not err in denying Owners' Rule 11 motion.

*Id.* at 365, 141 P.3d at 1012. Thus, the supreme court based its decision on fairly narrow and particular grounds.

Although some of the factual assertions underlying Plaintiffs-Appellants' prior HRCP Rule 11 motion are also made to support their claims in this case, the issues decided for the HRCP Rule 11 motion are not *identical* to the issue of malice for purposes of the slander of title or malicious prosecution claims.

The malice element for slander of title has been described as follows:

> Malice, express or implied, in the making of the slanderous statement is an essential ingredient of a cause of action for slander of title. While actual malice must be shown--that is, knowledge by the defendants that the disparaging statements were false or were made with reckless disregard for their truth or falsity--the malice necessary for a finding of liability for slander of title is not malice in its worst sense. An act will be deemed malicious if made in reckless or wanton disregard of the rights of another and with personal ill-will, or with an intent to deceive or injure, or to vex or annoy, or with no legal justification. Malice is established by showing that a party made a false statement, with full knowledge of its falsity, for the purpose of injuring the complainant.

50 Am. Jur. 2d *Libel and Slander* § 531 (2006) (internal footnotes omitted). The issues decided by the supreme court for the HRCP Rule 11 motion did not involve any allegation of slanderous or disparaging statements made with malice, and thus the issues decided for the Rule 11 motion are far from identical to the issue of malice for the slander of title claim in this case.

With regard to the malice element for a malicious prosecution claim, the Hawai'i Supreme Court has explained as follows:

> To sustain a claim for malicious prosecution, a plaintiff must show that the defendant initiated the prior lawsuit with malice, which this court has defined as "the intent, without justification or excuse, to commit a wrongful act," "reckless disregard of the law or of a person's legal rights," and "ill will; wickedness of heart." *Awakuni v. Awana*, 115 Hawai'i 126, 141, 165 P.3d 1027, 1042 (2007) (quoting Black's Law Dictionary 976 (8th ed.2004)). "The emphasis is upon the misuse of criminal—and sometimes civil—actions as a means for causing harm." *Prosser and Keeton on Torts*, § 119, at 870.

*Young*, 119 Hawai'i at 419, 198 P.3d at 682 (brackets omitted). Although perhaps a closer call, again, the issues litigated and decided relative to the HRCP Rule 11 motion in the Mechanic's Lien Action are not identical to the malice element for the malicious prosecution claim in this case. The allegations in the First Amended Complaint regarding the Mechanic's Lien Action are broader than the issues considered and decided for the HRCP Rule 11 motion. Moreover, although one potential basis for an HRCP Rule 11 motion could be that a pleading, written motion, or other paper signed by an attorney was "presented for any improper purpose," *see* HRCP Rule 11(b)(1), that issue was not addressed or decided in *808 Development.*

In *Myers*, the plaintiff brought a malicious prosecution claim against an attorney who had filed a counterclaim against the plaintiff in a prior lawsuit. In support of his malicious prosecution claim, the plaintiff pointed to an order in the prior lawsuit granting attorney's fees and finding that the counterclaim was "completely frivolous and totally unsupported by the facts and the law[.]" 67 Haw. at 392, 688 P.2d at 1148.[10] The Hawai'i Supreme Court ruled that the defendant-attorney was not "bound" by that prior finding relative to whether the attorney had acted with malice in the prior lawsuit,[11] but that the finding was evidence (along with other evidence) that raised a genuine issue of material fact as to whether the attorney had acted with malice. *Id.* at 393, 396, 688 P.2d at 1149, 1151; *see also Gordon v. Marrone*, 590 N.Y.S.2d at 655 (noting that a court's findings in imposing an award under a rule similar to

---

[10] It is unclear in *Myers* if the award of attorney's fees was based on HRCP Rule 11.

[11] It appears that at least part of the reason the attorney was not bound by the prior finding of frivolousness is because he had withdrawn from the prior case and had not had the opportunity to litigate the frivolousness issue. 67 Haw. at 392-93, 688 P.2d at 1148-49. Although a similar concern is not raised in this case, we view *Myers* as instructive.

FRCP Rule 11 would not necessarily collaterally estop a jury determination on the issue of malice in a subsequent malicious prosecution action).

We thus conclude that the prior ruling in the Mechanic's Lien Action -- that 808 Development argued for a good faith extension of the law and its arguments were not frivolous under HRCP Rule 11 -- can be *evidence* on the issue of malice for the malicious prosecution claim, but the prior ruling is not necessarily identical to or singularly dispositive of the malice issue.

With regard to the abuse of process claim, we likewise conclude that issue preclusion does not bar that claim in this case. As previously noted, the elements required for an abuse of process claim are: "(1) an ulterior purpose and (2) a wilful act in the use of the process which is not proper in the regular conduct of the proceeding." *Young*, 119 Hawai'i at 412, 198 P.3d at 675 (citations omitted). For the first element, ulterior purpose, the question is whether the defendant used legal process "primarily" for a purpose that was not legitimate. *Id.* at 413-14, 198 P.3d at 676-77. For the second element, willful act, the Hawai'i Supreme Court has explained that:

> "*[s]ome definite act or threat* not authorized by the process, or aimed at an objective not legitimate in the use of the process, *is required*; and *there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.*"

*Id.* at 414, 198 P.3d at 677 (citing *Prosser and Keeton on Torts* § 121, at 898 (5th ed., W. Page Keeton *et al.* eds., 1984)). Further, "the plaintiff must prove a 'willful act' distinct from the use of process *per se*." *Id.* at 416, 198 P.3d at 679. None of these issues were litigated or decided for purposes of the HRCP Rule 11 motion in the Mechanic's Lien Action.

3.   **Conclusion as to Claim Preclusion and Issue
     Preclusion**

Based on the above, we conclude that it was error for the circuit court to rely on the doctrines of claim preclusion or issue preclusion as the basis to dismiss, in part, the claims of slander of title, abuse of process and malicious prosecution.

As discussed below, however, dismissal as to some of these claims was proper on other grounds. "[W]here the circuit court's decision is correct, its conclusion will not be disturbed on the ground that it gave the wrong reason for its ruling." *Reyes v. Kuboyama*, 76 Hawai'i 137, 140, 870 P.2d 1281, 1284 (1994); *see also Strouss v. Simmons*, 66 Haw. 32, 40, 657 P.2d 1004, 1010 (1982) ("An appellate court may affirm a judgment of the lower court on any ground in the record which supports affirmance."); *McCarthy v. Yempuku*, 5 Haw. App. 45, 52, 678 P.2d 11, 16 (1984).

B.   **Litigation Privilege**

In its April 26, 2007 order, the circuit court granted summary judgment for Hochberg as to all remaining claims asserted in the First Amended Complaint. Hochberg had argued that a litigation privilege precluded certain claims against him in this case. As explained during the hearing on the motion, the circuit court held that a litigation privilege applied to the claims against Hochberg for *slander of title* and *abuse of process*.[12]

Because we concluded above that claim preclusion and issue preclusion do not bar any part of the claims asserted, we will consider Hochberg's assertion of a litigation privilege as

---

[12]   Although its written order was silent as to the basis for its ruling, the circuit court's oral ruling at the hearing expressed its reliance on *Woodcourt II Ltd. v. McDonald Co.*, 119 Cal. App. 3d 245 (Cal. Ct. App. 1981) and Hochberg's citation to 11 A. Miller, *Miller & Star California Real Estate* § 11:45 at 118-19 & nn.22-25 (3d ed. 2000) (which in turn cited *inter alia* to *Albertson v. Raboff*, 295 P.2d 405 (Cal. 1956) and *Woodcourt*).

it applies to the full extent of the claims asserted against him in the First Amended Complaint.

Plaintiffs-Appellants contend on appeal that there is no litigation privilege in Hawai'i barring claims against an attorney for slander of title, abuse of process, or malicious prosecution. They focus their argument on multiple cases from other jurisdictions and the core of their argument is that the privilege recognized in *Albertson v. Raboff*, 295 P.2d 405, 409 (Cal. 1956) has been abandoned or abrogated by California statute and subsequent cases.[13] They assert, therefore, that Hawai'i courts should not adopt the privilege set forth in *Albertson*.

In turn, Hochberg argues on appeal that this court should apply the litigation privileges previously recognized in Hawai'i in *Matsuura v. E.I. du Pont de Nemours & Co.*, 102 Hawai'i 149, 73 P.3d 687 (2003), and *Kahala Royal*, 113 Hawai'i 251, 151 P.3d 732.

Hawai'i has its own line of cases relevant to the issues on appeal, and we therefore need not rely on *Albertson* and its progeny. Hawaii's appellate courts have already delineated certain contours of the litigation privilege when claims are asserted against an attorney. Considering these authorities and their logical extension, we conclude that an absolute litigation privilege applies with respect to the slander of title claim, but that no litigation privilege applies to the claims for abuse of process and malicious prosecution.

---

[13] In *Albertson*, the California Supreme Court held that a notice of *lis pendens* was privileged with respect to a claim for disparagement of title. 295 P.2d at 409.

The court also noted, however, that "the fact a communication may be absolutely privileged for the purposes of a defamation action does not prevent its being an element of an action for *malicious prosecution* in a proper case." *Id.* at 410 (emphasis added). The court held that the complaint in that case stated a cause of action for malicious prosecution and thus reversed the trial court's judgment of dismissal.

1.   **Litigation Privilege Applies to the Slander of Title Claim**

"Hawai'i courts have applied an absolute litigation privilege in *defamation* actions for words and writings that are material and pertinent to judicial proceedings." *Matsuura*, 102 Hawai'i at 154, 73 P.3d at 692 (citations omitted) (emphasis added). Moreover, it has been recognized that the privilege adopted in Hawai'i is consistent with the privilege as set forth in Restatement (Second) of Torts § 586 (1977). *McCarthy*, 5 Haw. App. at 48-49, 678 P.2d at 14-15.

Restatement (Second) of Torts § 586 states:

> An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.

In *McCarthy*, this court further explained the policy reasons and the requirements for the privilege to apply:

> The absolute privilege is grounded on the important public policy of "securing to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients." Restatement § 586 comment a. Thus, it not only protects attorneys in the pursuit of their profession, but also ensures the public's right to zealous legal representation. Counterbalancing this, however, is the equally important policy of protecting individuals from defamatory statements which are unrelated to the judicial proceeding involved. Consequently, "the privilege does not cover the attorney's publication of defamatory matter that has no connection whatever with the litigation." Restatement § 586 comment c.
>
> To avail himself of the absolute privilege, an attorney has the burden of proving the following essential elements: (1) that the defamatory statements were made in the course of a judicial proceeding and (2) that the statements were related, material, and pertinent to that proceeding.
>
> Regarding the first element, the Restatement construes "the course of a judicial proceeding" as follows:
>
> > The publication of defamatory matter by an attorney is protected not only when made in the institution of the proceedings or in the conduct of litigation before a

> judicial tribunal, but in conferences and other communications preliminary to the proceeding.

Restatement § 586 comment a.

> To prove the second element, it must be shown that there is a sufficient connection between the defamatory statements and the judicial proceeding. *See* Restatement § 586 comment c. For the court to find such a connection, the statements must be (1) "reasonably related" to the proceeding, which means that the statements must *"have some connection or logical relation to the judicial proceeding,"* and (2) "made to achieve the objects of the litigation."

5 Haw. App. at 48-49, 678 P.2d at 14. (internal citations omitted).

It does not appear that Hawaii's appellate courts have previously considered whether to apply this absolute litigation privilege to a claim for slander of title. However, it is generally recognized that the absolute litigation privilege should be extended to apply to a slander of title claim. The Restatement (Second) of Torts references slander of title as one type of a claim for "injurious falsehood." *See* Restatement (Second) of Torts §§ 623A and 624. In turn, Restatement (Second) of Torts § 635 extends the absolute litigation privilege to injurious falsehood claims, stating "[t]he rules on absolute privilege to publish defamatory matter stated in §§ 583 to 592A apply to the publication of an injurious falsehood." Restatement (Second) of Torts § 635. *See also Bennett v. McKibben*, 915 P.2d 400, 404-05 (Okla. Civ. App. 1995) (holding that the absolute litigation privilege provided to attorneys in Restatement (Second) of Torts § 586 applies to slander of title actions as well); *Conservative Club of Wash. v. Finkelstein*, 738 F.Supp. 6, 13 (D.D.C. 1990).

We therefore hold, as a matter of first impression, that the absolute litigation privilege as recognized in *Matsuura* and *McCarthy* applies to claims for slander of title. In this case, the claim for slander of title against Hochberg in the First Amended Complaint is based on the filing of the two NOPAs.

Considering the requirements for application of the absolute litigation privilege set out in *McCarthy*, the privilege applies here. That is, the NOPAs were filed in the course of judicial proceedings and were related to those proceedings. *See McCarthy*, 5 Haw. App. at 48-49, 678 P.2d at 14. Thus, the judgment in favor of Hochberg on the slander of title claim was proper.

As discussed *infra*, although Plaintiffs-Appellants cannot pursue a cause of action for slander of title arising from the filing of the NOPAs in this case, the conduct of filing the NOPAs may still be relevant to other claims to which a privilege does not apply.

## 2. **The Privilege Recognized in *Kahala Royal* Does Not Apply to Claims for Abuse of Process and Malicious Prosecution**

In *Kahala Royal*, the Hawai'i Supreme Court held that a litigation privilege applied to preclude claims of intentional interference with contractual relations (IICR) and intentional interference with prospective economic advantage (IIPEA) against attorneys who had represented parties adverse to the plaintiff in prior arbitration-related proceedings. 113 Hawai'i at 266-73, 151 P.3d at 747-54. The plaintiffs in *Kahala Royal* argued that attorneys should not be immune under a litigation privilege when claims of intentional torts are asserted against them, but the supreme court did not agree. The court instead focused on whether the allegations against the attorneys met certain criteria for the litigation privilege to apply.

As an initial matter, *Kahala Royal* dispensed with the notion that a litigation privilege could only apply to communications made during litigation. Discussing *Clark v. Druckman*, 624 S.E.2d 864 (W.Va. 2005),[14] the court noted

---

[14] *Clark* cited to the Hawai'i Supreme Court's opinion in *Matsuura*, 102 Hawai'i at 155, 73 P.3d at 693, and considered the policies underlying the litigation privilege as articulated in *Matsuura*. *See* 624 S.E.2d at 870. In

(continued...)

favorably that the *Clark* court saw "no reason to distinguish between *communications* made during the litigation process and *conduct* occurring during the litigation process." 113 Hawai'i at 268, 151 P.3d at 749 (quoting *Clark*, 624 S.E.2d at 870). In *Clark*, it was held that the litigation privilege should apply beyond written or oral statements arising in civil litigation to also apply to alleged conduct in the course of such litigation. *See* 624 S.E.2d 864.

After further analyzing *Clark* and a number of cases from other jurisdictions, the Hawai'i Supreme Court in *Kahala Royal* concluded that a litigation privilege applied in that case because: the complaints failed to allege that the defendant-lawyers were acting outside the scope of their lawyer-client relationship; the complaints failed to set forth factual allegations from which actual malice could reasonably be said to exist, such that there was "no allegations that indicate that the Lawyers possessed a desire to harm which is independent of the desire to protect their clients"; and the complaints were "devoid of any allegations that the Lawyers acted for personal gain or with ill-will towards [the plaintiffs]." 113 Hawai'i at 271, 151 P.3d at 752 (internal quotation marks and original brackets omitted).

---

[14](...continued)
*Matsuura*, the Hawai'i Supreme Court stated that generally "[t]he scope of any privilege is based upon policy considerations" and that the "interrelated policies associated with the litigation privilege" include:

> (1) promoting the candid, objective, and undistorted disclosure of evidence; (2) placing the burden of testing the evidence upon the litigants during trial; (3) avoiding the chilling effect resulting from the threat of subsequent litigation; (4) reinforcing the finality of judgments; (5) limiting collateral attacks upon judgments; (6) promoting zealous advocacy; (7) discouraging abusive litigation practices; and (8) encouraging settlement.

102 Hawai'i at 155, 73 P.3d at 693.

Importantly for purposes of this case, however, the *Kahala Royal* court appears to have carved out certain claims from the litigation privilege recognized in that case, including claims for malicious prosecution and abuse of process. After quoting a part of *Clark* that explained that the litigation privilege did not bar liability of an attorney in all circumstances, the Hawai'i Supreme Court noted this court's statement that "an attorney may be liable for *malicious prosecution* if he acts for an improper purpose" and that "an attorney may also be sued and held personally liable if he maliciously participates in [an] *abuse of process*[.]" 113 Hawai'i at 269, 151 P.3d at 750 (emphasis added) (quoting *Myers v. Cohen*, 5 Haw. App. 232, 236, 243, 687 P.2d 6, 11, 14-15 (1984), *overruled on other grounds by Myers*, 67 Haw. 389, 688 P.2d 1145).[15]

The Hawai'i Supreme Court's reliance on *Clark* is of further note because although *Clark* held that "the litigation privilege is generally applicable to bar a civil litigant's claim for civil damages against an opposing party's attorney if the alleged act of the attorney occurs in the course of the attorney's representation of an opposing party and is conduct related to the civil action," 624 S.E.2d at 871, *Clark* also held that "the litigation privilege does *not* apply to claims of *malicious prosecution* and *fraud*." *Id.* at 872 (emphasis added).

With regard to a claim for *abuse of process*, other courts generally have held that a litigation privilege does *not* apply to provide immunity for an attorney. *See Mozzochi v. Beck*, 529 A.2d 171 (Conn. 1987); *Peerman v. Sidicane*, 605 S.W.2d 242,

---

[15]   The *Kahala Royal* court also noted the conclusion in *Matsuura* that "a party is not immune from liability for civil damages based upon that party's *fraud* engaged in during prior litigation proceedings[.]" 113 Hawai'i at 269, 151 P.3d at 750 (emphasis added) (quoting *Matsuura*, 102 Hawai'i at 162, 73 P.3d at 700).

245 (Tenn. Ct. App. 1980); *see also* 1 Am. Jur. 2d *Abuse of Process* § 21 (2005) ("The absolute privilege that protects attorneys from liability for defamation occurring in the course of a judicial proceeding does not provide an attorney with an absolute defense to liability for abuse of process.").

We therefore hold that the litigation privilege recognized in *Kahala Royal* does not apply to provide immunity for the abuse of process and malicious prosecution claims in this case.

C.    **Abuse of Process Claim**

Given our holdings above that claim preclusion and issue preclusion do not bar the abuse of process claim in this case, and that the litigation privilege recognized in *Kahala Royal* does not extend to provide immunity against the abuse of process claim, we now consider whether Plaintiffs-Appellants have asserted allegations sufficient to support such a claim. Hochberg points to the Hawai'i Supreme Court's decision in *Young*, where the court declined to accept the lack-of-justification standard to establish an abuse of process claim. *See* 119 Hawai'i at 416, 198 P.3d at 679. We agree that, in light of the decision in *Young*, Plaintiffs-Appellants have failed to allege a cognizable claim for abuse of process.

In *Young*, the Hawai'i Supreme Court analyzed the underlying requirements for meeting the two elements for an abuse of process claim, which are: "(1) an ulterior purpose and (2) a wilful act in the use of the process which is not proper in the regular conduct of the proceeding." *Id.* at 412, 198 P.3d at 675. Having concluded that the allegations in that case were sufficient to meet the first element, the court then considered the second element. In this part of its analysis, the court refused to follow cases from other jurisdictions which "have essentially held that using process itself will constitute the

requisite willful act where a party's use of procedures is 'not justified or used for legitimate or reasonably justifiable purposes of advancing [his] interests.'" *Id.* at 415, 198 P.3d at 678.[16] Importantly, the court explained:

> this lack-of-justification requirement serves the same function as the element of a malicious prosecution claim requiring that the prior proceedings were initiated without probable cause.
>
> The tort of malicious prosecution, however, differs from the tort of abuse of process, because it requires that the prior proceedings must have *terminated* in the plaintiff's favor. Yet, if the willful act requirement of the tort of abuse of process could be satisfied by showing that there was a lack of justification in the use of process, parties could avoid their obligation of establishing the dispositional element in a malicious prosecution claim by simply alleging a claim for abuse of process. This dispositional requirement furthers the interests of finality and judicial economy.

*Id.* (internal citations, quotation marks, and footnote omitted). In short, the court rejected the idea that an abuse of process claim could be a short-cut to avoid the "dispositional element" required for a malicious prosecution claim. The court concluded: "We therefore decline to follow the lack-of-justification standard and instead hold that, in order to establish an abuse of process claim, the plaintiff must prove a 'willful act' *distinct from* the use of process *per se*." *Id.* at 416, 198 P.3d at 679 (some emphasis added).

Applying *Young* to the instant case, we conclude that the allegations in the First Amended Complaint fail to assert a willful act distinct from the use of process. Instead, the

---

[16] One of the cases that the Hawaiʻi Supreme Court refused to follow in *Young* was *Nienstedt v. Wetzel*, 651 P.2d 876 (Ariz. Ct. App. 1982). In *Nienstedt*, the defendant-attorney in an abuse of process action had *inter alia* made factual misrepresentations to a prior court and the prior court had made a finding it had been deceived by him. *Id.* at 880. The attorney was found liable for abuse of process because his "use of various legal processes was not justified or used for legitimate or reasonably justifiable purposes of advancing appellants' interests in ongoing litigation." *Id.* at 882. To the contrary, under *Young*, when the willful act is not *distinct from* the use of process, an abuse of process claim cannot be established. 119 Hawaiʻi at 415-16, 198 P.3d at 678-79.

allegations contend in numerous and varied ways that Hochberg lacked justification for his use of process in the Mechanic's Lien Action and the Foreclosure Action. Given the holding in *Young*, such lack-of-justification allegations do not suffice to support an abuse of process claim. Dismissal of the claim is warranted and thus, for these reasons, the judgment in favor of Hochberg on the abuse of process claim was proper.

### D. Malicious Prosecution Claim

As discussed above, claim preclusion and issue preclusion do not bar the malicious prosecution claim, and the litigation privilege set out in *Kahala Royal* does not provide immunity from a malicious prosecution claim. We thus consider whether Plaintiffs-Appellants have asserted allegations in their First Amended Complaint sufficient to state a cause of action for malicious prosecution. To the extent they have, we review the circuit court's grant of summary judgment related to this claim.

As stated earlier, to establish a claim for malicious prosecution, the required elements are: "(1) that the prior proceedings were terminated in the plaintiffs' favor, (2) that the prior proceedings were initiated without probable cause, and (3) that the prior proceedings were initiated with malice." *Myers*, 67 Haw. at 391, 688 P.2d at 1148 (citations omitted).

#### 1. Malicious Prosecution Based on the Foreclosure Action

##### a. Dismissal on the Pleadings

Given the first required element, that the prior proceedings were terminated in Plaintiffs-Appellants' favor, the malicious prosecution claim was properly dismissed on the pleadings as to all allegations related to the Foreclosure Action, *except* for the filing of the First NOPA.

By its own terms, the First Amended Complaint asserted that the Foreclosure Action was still pending in the circuit

court and that parts of the claims therein were to be decided in binding arbitration. Therefore, the claims in the Foreclosure Action were still being litigated when Plaintiffs-Appellants initiated this case and their claim for malicious prosecution could not be maintained without those proceedings having first been terminated in their favor.

As to the First NOPA, however, the First Amended Complaint alleged that the NOPA had been filed in the Foreclosure Action *and had been expunged* after hearings before the circuit court. Although the main proceedings in the Foreclosure Action were not yet terminated, we conclude that the First NOPA resulted in a type of ancillary proceeding that may support a subsequent malicious prosecution action, so long as the NOPA filing was terminated in favor of the party who later files the malicious prosecution claim. In other words, regardless of the outcome of the prior main proceeding, the alleged termination of this prior ancillary proceeding in favor of Plaintiffs-Appellants can support their malicious prosecution claim in this case.

In addressing the malicious prosecution cause of action, the Hawaiʻi Supreme Court has noted its reliance on Prosser, Law of Torts § 120 at 850-56 (4th ed. 1971). *See Myers*, 67 Haw. at 391, 688 P.2d at 1148. An updated version of this treatise provides:

> Ordinarily, the plaintiff must prove the termination of the former proceeding in his favor. *But there are necessary exceptions* where, as in the case of putting a man under bond to keep the peace, the proceeding is an ex parte one and relief is granted without an opportunity for the party against whom it is sought to be heard. *This is true also as to proceedings ancillary to a civil suit*, such as attachment or arrest under civil process, *as to which, if they are themselves unjustified, it is unnecessary to show a favorable termination of the main action.* It usually is held, however, with a little authority to the contrary, that if an opportunity has been given to contest the facts, the plaintiff must show a favorable termination of the ancillary proceeding itself.

Prosser and Keeton, Law of Torts § 120 at 892 (5th ed. 1984) (emphasis added). Similarly, Restatement (Second) of Torts

§ 674, which addresses liability for the wrongful use of civil proceedings, is in accord that an ancillary proceeding can be the underlying basis for a malicious prosecution claim. Comment f to Restatement (Second) of Torts § 674, provides:

> A particular civil proceeding may be ancillary to other proceedings. . . . Even though the principal proceedings are properly brought, the ancillary proceeding may be wrongfully initiated. In this case the wrongful procurement and execution of the ancillary process subjects the person procuring it to liability under the rule stated in this Section.

The Hawai'i Supreme Court's analysis in *S. Utsunomiya Enterprises v. Moomuku Country Club*, 75 Haw. 480, 866 P.2d 951 (1994) provides further support that a *lis pendens* or NOPA filing can create ancillary proceedings. There, the Hawai'i Supreme Court set forth the limited purposes for which a *lis pendens* could be filed under HRS § 634-51 (1985).[17] Important for purposes of this case, the court expressed its concern about the adverse impact that a recorded *lis pendens* could have. In holding that a *lis pendens* was an encumbrance on property, the court noted that "a lis pendens *itself* operates as a burden on the property tending to lessen the value or interfere with its free enjoyment, *separate and apart from the underlying claim*[.]" *Id.* at 503, 866 P.2d at 963 (emphasis added) (internal quotation marks and original brackets omitted); *Cf. Knauer v. Foote*, 101 Hawai'i 81, 85, 63 P.3d 389, 393 (2003) (an order expunging a *lis pendens* is an appealable collateral order "affecting rights which are independent of, and separable from, the rights asserted in the main action[,]" in part because it "does not address the merits of the underlying claim."). Given the consideration and

---

[17] In *S. Utsunomiya*, the court relied on *Urez Corp. v. Superior Court*, 190 Cal.App.3d 1141 (1987) and quoted favorably from *Urez* that "*allegations of equitable remedies, even if colorable, will not support a lis pendens if, ultimately, those allegations act only as a collateral means to collect money damages.*" 75 Haw. at 511, 866 P.2d at 966. The court in *S. Utsunomiya* thus held that the *lis pendens* in that case should have been expunged because the party filing it had not claimed "title to or a right of possession of the property." *Id.* at 513, 866 P.2d at 967.

concerns expressed in *S. Utsunomiya*, we conclude that the filing of a *lis pendens* is an ancillary proceeding. If a *lis pendens* is terminated favorably for a party to the prior proceeding who was adversely affected by its filing, the *lis pendens* filing can serve as the basis for meeting the first element of a subsequent malicious prosecution claim.

In the instant case, Plaintiffs-Appellants alleged that Hochberg had aided and abetted in the filing of the First NOPA (which related to their residence), that Hochberg had opposed expungement of the NOPA but later conceded that 808 Development did not have a right to file it, and that the NOPA was later expunged. These allegations are sufficient to meet the first element of the malicious prosecution claim, *i.e.* that the prior ancillary proceeding involving the filing of the First NOPA was terminated in favor of Plaintiffs-Appellants.

Further, the First Amended Complaint contains sufficient allegations regarding the other two required elements: that the prior proceedings were initiated without probable cause; and that the prior proceedings were initiated with malice.

Therefore, dismissal on the pleadings for the malicious prosecution claim was not proper with respect to the ancillary proceeding involving the filing of the First NOPA, but was proper with regard to all other allegations pertaining to the Foreclosure Action.

b.  **Summary judgment on the malicious prosecution claim related to the First NOPA**

Although dismissal on the pleadings is not warranted, based on evidence adduced by Hochberg, the circuit court properly granted summary judgment on the malicious prosecution claim related to the First NOPA.

The circuit court granted summary judgment to Hochberg on the malicious prosecution claim to the extent it was based on the filing of both NOPAs. The circuit court's oral ruling

indicated it focused on the malice element and determined that Hochberg's uncontested declaration established that there were no genuine issues of material fact that precluded judgment in his favor. For the following reasons, we agree as to the First NOPA that summary judgment was appropriate on the malicious prosecution claim.

In support of his motion for summary judgment, Hochberg submitted his declaration which attested, among other things, that: at the time the First NOPA was filed, Sakatani held the original of the promissory note and Hochberg had a bona fide belief that his clients had a right to foreclose on the property; and 808 Development and the Sakatanis had prayed for foreclosure on the subject property.[18]

Plaintiffs-Appellants failed to submit any admissible evidence in opposition to Hochberg's motion for summary judgment.[19] In order to establish the element of malice for a malicious prosecution claim, a plaintiff must show *inter alia* that the defendant initiated the prior proceeding with "the intent, without justification or excuse, to commit a wrongful act" and the emphasis is on the misuse of criminal or civil actions "as a means for causing harm." *Young*, 119 Hawai'i at 419, 198 P.3d at 682 (brackets omitted). Here, the uncontested evidence was that at the time the First NOPA was filed, Hochberg

---

[18] In Black's Law Dictionary, to "foreclose" means "[t]o terminate a mortgagor's interest in property[.]" *Black's Law Dictionary* 719 (9th ed. 2009).

[19] We find no merit in Plaintiffs-Appellants' point of error alleging generally and without specificity that the circuit court applied the wrong standards for summary judgment and abused its discretion in its handling of the summary judgment proceedings. Hochberg's motion for summary judgment was properly filed, to which his declaration and certain exhibits were attached. Plaintiffs-Appellants had a full opportunity to respond and filed a memorandum in opposition to which they attached various exhibits without any accompanying affidavit or declaration. Moreover, notwithstanding their assertion that they did not have adequate time to conduct discovery, Plaintiffs-Appellants do not contend, and the record does not indicate, that they sought a continuance pursuant to HRCP Rule 56(f) to conduct discovery.

had a bona fide belief that his clients had a right to foreclose on the property and 808 Development and the Sakatanis had prayed for foreclosure on the subject property. Given these undisputed facts, there are no genuine issues of material fact with regard to the required element of malice.

The circuit court thus properly granted summary judgment for Hochberg on the malicious prosecution claim with respect to the filing of the First NOPA.

No portion of the malicious prosecution claim remains related to the Foreclosure Action.

### 2. Malicious Prosecution Based on the Mechanic's Lien Action

#### a. Dismissal on the Pleadings Not Warranted

The First Amended Complaint alleges that the Mechanic's Lien Action, which was ultimately resolved by the supreme court's opinion in *808 Development*, was terminated in favor of Plaintiffs-Appellants. Similarly, the First Amended Complaint also alleges that the Second NOPA was expunged by the supreme court. Hence, Plaintiffs-Appellants have asserted sufficient allegations to meet the first element of the malicious prosecution claim. Moreover, the First Amended Complaint contains sufficient allegations to support the remaining two elements as well. Therefore, dismissal on the pleadings is not warranted for the malicious prosecution claim to the extent the allegations involve the Mechanic's Lien Action.

#### b. Summary judgment on the malicious prosecution claim related to the Second NOPA

The circuit court granted summary judgment on the malicious prosecution claim to the extent it arose from the filing of the Second NOPA, concluding there were no genuine issues of material fact on the malice element. However, in his declaration, Hochberg does not address the basis for the filing

of the Second NOPA. Instead, he attests that he never intended to file the Second NOPA and he attached as Exhibit D a copy of the Second NOPA showing he did not file it. Plaintiffs-Appellants challenged the admissibility of Exhibit D and the circuit court did not consider the exhibit in its ruling.

Because Exhibit D is crucial as to whether summary judgment was warranted related to the Second NOPA, we consider Hochberg's request pursuant to Hawai'i Rules of Evidence (HRE) 201 that this court take judicial notice of the Second NOPA filed in the Mechanic's Lien Action. HRE 201 provides, in relevant part:

> (b) Kinds of facts. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
>
> (c) When discretionary. A court may take judicial notice, whether requested or not.
>
> (d) When mandatory. A court shall take judicial notice if requested by a party and supplied with the necessary information.

HRE 201. "Courts have generally recognized that they may, in appropriate circumstances, take notice of proceedings in other courts, both within and without their judicial system, if those proceedings have a direct relation to the matter at issue." *Roxas v. Marcos*, 89 Hawai'i 91, 110 n.9, 969 P.2d 1209, 1228 n.9 (1998) (quoting *Sapp v. Wong*, 3 Haw. App. 509, 512 n.3, 654 P.2d 883, 885-86 n.3 (1982)) (brackets and other citations omitted). Moreover, we need not take judicial notice as to the truth of any facts asserted within the Second NOPA. *See State v. Kotis*, 91 Hawai'i 319, 341-42, 984 P.2d 78, 100-01 (1999). Rather, the pertinent information contained in the Second NOPA is whether Hochberg appears as counsel on the document.

Because of its direct relation and relevance to an issue before this court, we agree to take judicial notice of the

Second NOPA that was filed on October 28, 2004 in the Hawai'i Supreme Court in the Mechanic's Lien Action, *808 Development LLC v. Murakami*, Appeal No. 26610. In particular, we take judicial notice that Hochberg's name does not appear as counsel for the filing party, 808 Development, or as the signing attorney.

Hochberg's uncontested declaration states that "a second Notice of Pendency of Action was not going to be filed as 808 was relying on the foreclosure action as a vehicle through which a mechanics lien would be foreclosed in the event the Hawaii Supreme Court reversed [the circuit court in the Mechanic's Lien Action]." Based on this evidence and the judicially noticed fact that Hochberg was not the counsel who filed the Second NOPA, he is entitled to summary judgment on the malicious prosecution claim as it relates to the filing of the Second NOPA.

### 3. Remaining portions of the malicious prosecution claim

Hochberg's summary judgment motion and the circuit court's summary judgment ruling were limited to the claims as they arose from the filing of the two NOPAs. All other aspects of the claims in the original complaint had previously been dismissed on grounds of claim preclusion or issue preclusion, which we have determined above do not apply. Therefore, except with regard to the Second NOPA, summary judgment was not requested or considered regarding the allegations pertaining to the Mechanic's Lien Action.

In light of the above, except with respect to the filing of the Second NOPA, the malicious prosecution claim remains to the extent it arises from allegations pertaining to the Mechanic's Lien Action.

## IV.  Conclusion

On the slander of title claim, Hochberg is entitled to dismissal pursuant to the litigation privilege recognized in *Matsuura* and *McCarthy*.

On the abuse of process claim, Hochberg is entitled to dismissal because pursuant to *Young*, the allegations in the First Amended Complaint fail to state a claim for abuse of process.

On the malicious prosecution claim: Hochberg is entitled to dismissal on the pleadings as to all allegations involving the Foreclosure Action, except as to the First NOPA; based on Hochberg's uncontested declaration, summary judgment was proper as to the First NOPA; and because Hochberg did not file the Second NOPA, summary judgment was also proper as to the Second NOPA.  The only claim that remains is the malicious prosecution claim to the extent it arises from allegations related to the Mechanic's Lien Action, but excluding matters pertaining to the Second NOPA.

We therefore vacate the judgment in favor of Hochberg on the malicious prosecution claim to the extent that claim arises from allegations related to the Mechanic's Lien Action, other than matters pertaining to the Second NOPA.

In all other respects we affirm the judgment in favor of Hochberg.

On the briefs:

Gary Victor Dubin
Long H. Vu
(Dubin Law Offices)
for Plaintiff-Appellants

David M. Louie
Jodie D. Roeca
for Defendant-Appellee
Lloyd James Hochberg, Jr.