**Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000529
26-JUL-2018
07:54 AM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

CHRISTIAN SAKAL, Plaintiff-Appellant,
v.
ASSOCIATION OF APARTMENT OWNERS OF HAWAIIAN MONARCH;
JONAH SCOTT KOGEN; and K&F 1984 LLC,
Defendants-Appellees,
and
JOHN AND MARY DOES 1-10, Defendants.

NOS. CAAP-15-0000529 and CAAP-15-0000573

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 14-1-1118)

JULY 26, 2018

GINOZA, CHIEF JUDGE, FUJISE and LEONARD, JJ.

OPINION OF THE COURT BY LEONARD, J.

Plaintiff-Appellant Christian Sakal (**Sakal**) appeals from the Final Judgment (**Judgment**) entered by the Circuit Court of the First Circuit (**Circuit Court**),[1] on August 5, 2015, in favor of Defendants-Appellees the Association of Apartment Owners of Hawaiian Monarch (**the AOAO**) and Jonah Scott Kogen (**Kogen**)

---

[1] The Honorable Bert I. Ayabe presided.

(collectively, **Appellees**). Sakal also challenges the Circuit Court's (1) Order Granting Defendant Jonah Scott Kogen's Motion to Dismiss Complaint, filed October 21, 2014 (**Order Dismissing Kogen**), and (2) Order Granting Defendant Association of Apartment Owners of Hawaiian Monarch's Motion to Dismiss Complaint, filed June 16, 2015 (**Order Dismissing the AOAO**).

This case presents difficult and consequential questions concerning whether an association of apartment owners must have a power of sale over its units in order to foreclose on a lien against a unit through the nonjudicial power of sale foreclosure procedures set forth in the Hawai'i Foreclosures statute. After an exhaustive review, we have concluded that over a number of years the Legislature has worked to craft workable, nonjudicial foreclosure procedures, available to associations as well as lenders, but at no point did the Legislature take up the issue of whether to enact a blanket grant of powers of sale over all condominiumized properties in Hawai'i. Accordingly, we conclude that a power of sale in favor of a foreclosing association must otherwise exist, in the association's bylaws or another enforceable agreement with its unit owners, in order for the association to avail itself of the nonjudicial power of sale foreclosure procedures set forth in Hawaii Revised Statutes (**HRS**) chapter 667. As discussed herein, under the circumstances of this case, we conclude that Sakal may not regain title and possession of the subject property, but that the Circuit Court erred in dismissing Sakal's claims against the AOAO for wrongful foreclosure.

I.   BACKGROUND

On May 5, 2014, Sakal filed a three-count Complaint seeking relief against the AOAO for wrongful foreclosure, and against all named defendants for quiet title and trespass. The Complaint includes, *inter alia*, the following factual allegations:

It is alleged that, on January 17, 1979, the developer of the Hawaiian Monarch Condominium Project adopted the Bylaws of the Association of Apartment Owners of Hawaiian Monarch (**Bylaws**)

and that the Bylaws provided, "the Developer hereby declares that all of the property (of the Hawaiian Monarch) is held and shall be held, conveyed, mortgaged, encumbered, leased, rented, used, occupied and improved subject to the following Bylaws . . . [.]" Article VI of the Bylaws, entitled "Common Expenses, Apartment Expenses, Taxes and Accounting," Section 4, entitled "Default in Payment of Assessments," allegedly states:

> In the event of a default or defaults in payment of any such assessment or assessments and in addition to any other remedies the Board of Directors may have, the Board of Directors may enforce each such obligation as follows:
> (a) By suit or suits to enforce such obligations. . .
> (b) . . . [T]he Board may file a claim of lien against the Apartment of such delinquent Owner. . . . Upon recordation of a duly executed original or copy of such claim of lien with the Office of the Assistant Registrar of the Land Court of the State of Hawaii, the Board shall have all remedies provided in Section 514A-90, HRS.

The Bylaws were reportedly amended in the 1990s, but the amendments, Sakal alleged, did not grant the AOAO "any additional power regarding the foreclosure of an association lien."

On March 31, 2006, Sakal was assigned a leasehold interest in 444 Niu Street, Unit 2806-A, in the Hawaiian Monarch Condominium Project (**Property**), as a tenant in severalty in an "Assignment of Condominium Conveyance Document" (**Assignment of Conveyance**) registered with the Office of the Assistant Registrar, Land Court of the State of Hawai'i (**Land Court**).[2]

On March 16, 2012, the AOAO filed a "Notice of Lien" (**Lien Notice**) against Sakal in the Land Court, claiming a lien for unpaid assessments in the amounts of $11,417.91 and $10,589.42, and on June 20, 2012, the AOAO filed a "Notice of Default and Intention to Foreclose" (**Default Notice**) against Sakal in the Land Court, which stated:

> (i)f the default is not cured by the deadline stated in this notice, the entire unpaid balance of moneys owed to the association will be due and the association intends to conduct a power of sale foreclosure to sell the property at a public sale without any court action and without going to

___

[2] All filings in the Land Court referenced herein were filed under the same certificate of title number - 320,047.

court, and the association or any other person may acquire the property at the public sale.

It appears that on October 11, 2012, the AOAO filed an "Amended Notice of Default and Intention to Foreclose" with the Land Court, and on October 15, 2012, the AOAO filed a "Notice of Association's Non-Judicial Foreclosure Under Power of Sale" (**Power of Sale Notice**) with the Land Court, stating that a public auction would be held on December 3, 2012, at the State Capitol Building "pursuant to Sections 514B-146 and 667-21 through 667-42, HRS, as amended."

Sakal asserts that, on November 30, 2012, he filed a Motion for Preliminary Injunction Staying Non-Judicial Foreclosure Sale of Property with the Circuit Court in Civil No. 12-1-0686, which was denied on December 3, 2012.[3] Also on December 3, 2012, the AOAO reportedly held a public auction offering the Property for sale. On January 8, 2013, the AOAO filed a "Grantor's Affidavit of Non-judicial Foreclosure Under Power of Sale" with the Land Court (**Affidavit**).[4] On January 16, 2013, a quitclaim deed (**Quitclaim Deed**), which conveyed the Property from the AOAO to Kogen for $50,500, was recorded in the Land Court.

It appears that, on April 2, 2013, Kogen filed an ejectment action against Sakal in the District Court of the First Circuit (**District Court**) in Case No. 1RC-13-1-02405. The District Court entered a Judgment for Possession and Writ of Possession in favor of Kogen on May 5, 2013.[5]

---

[3]     It does not appear that Sakal appealed or otherwise sought relief from the denial of his motion for an injunction.

[4]     The Bylaws, Default Notice, Power of Sale Notice, Amended Notice of Default and Intention to Foreclose, and Affidavit are not in the record on appeal. For the purposes of this appeal, however, it does not appear that Appellees dispute the material facts alleged in the Complaint.

[5]     Although it appears from the District Court's minutes that Kogen's claim for money damages against Sakal was to be dismissed, it does not appear that a final written order or judgment was entered. However, it also appears that Sakal did not file an affidavit, pursuant to the District Court Rules of Civil Procedure Rule 12.1, seeking to interpose a defense to the jurisdiction of the District Court to the effect that title to real estate was involved,
(continued...)

4

Sakal filed the Complaint herein on May 5, 2014. The AOAO filed an answer on June 12, 2014. Kogen did not file an answer and instead, on August 11, 2014, filed a motion to dismiss the claims against him in Counts 2 and 3 of the Complaint pursuant to Rule 12(b)(6) of the Hawaiʻi Rules of Civil Procedure (**HRCP**).

Citing Aames Funding Corp. v. Mores, 107 Hawaiʻi 95, 110 P.3d 1042 (2005), Kogen primarily argued that Sakal's claim for relief from the nonjudicial foreclosure was untimely because Sakal was required to challenge the validity of the foreclosure proceedings prior to the date of the recordation of the Quitclaim Deed. In opposition, Sakal argued that: (1) HRS chapter 501, which was at issue in Aames, does not apply to the property interest in this case; (2) unlike in Aames, no new Transfer Certificate of Title (**TCT**) was issued to Kogen; (3) the nonjudicial foreclosure conducted by the AOAO pursuant to HRS chapter 667 was illegal because the AOAO did not hold a power of sale; (4) implying a power of sale would be an unreasonable impairment of contract, and thus contrary to HRS § 514B-22; and (5) a nonjudicial foreclosure is void and unenforceable where the foreclosing entity does not have a power of sale. In reply, Kogen argued, *inter alia*, that the AOAO had the authority to "foreclose by power of sale" and that the Bylaws granted the AOAO the remedy of nonjudicial foreclosure because they authorize the Board of Directors to use "any other remedies it may have" to enforce assessments. At the hearing on Kogen's motion, the Circuit Court orally granted the motion, stating: "The Court finds that HRS [§ 514B-146] provides the association with broad powers, including foreclosure and [it] doesn't make any sense for the association to have to amend its bylaws every time the Legislature amends the law. Also HRS 667-102(b) claims by the

---

[5](...continued)
prior to the Trial Re: Possession and the entry of the Judgment for Possession and Writ of Possession.

unit owners are barred if not made before the affidavit and conveyance documents are filed." (Format altered). The Order Dismissing Kogen was entered on October 21, 2014.

On March 10, 2015, the AOAO filed its motion to dismiss the Complaint in its entirety, pursuant to HRCP Rule 12(b)(6). The AOAO's motion was supported by a declaration of counsel, the Quitclaim Deed, and a transcript of the hearing on Kogen's motion to dismiss. The AOAO's arguments mirrored those in Kogen's motion to dismiss. On March 23, 2015, Sakal filed a memorandum in opposition, which was supported by a declaration of counsel, the Assignment of Conveyance, and the Lien Notice. After a hearing on March 31, 2015, the Circuit Court entered the Order Dismissing the AOAO on June 16, 2015.

On July 16, 2015, Sakal filed a notice of appeal in CAAP-15-0000529. On August 5, 2015, the Circuit Court entered the Judgment. On August 11, 2015, Sakal filed a second notice of appeal in CAAP-15-0000573. The appeals were consolidated into CAAP-15-0000529 on August 17, 2015.

II. POINT OF ERROR

Sakal raises a single point of error, contending that the Circuit Court erred when it dismissed his Complaint for failure to state a claim because the AOAO conducted a wrongful power of sale nonjudicial foreclosure without having a valid power of sale.

III. APPLICABLE STANDARD OF REVIEW

This court reviews a trial court's ruling on a motion to dismiss de novo. Isobe v. Sakatani, 127 Hawai'i 368, 375, 279 P.3d 33, 40 (App. 2012) (citing Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Hawai'i 92, 104, 176 P.3d 91, 103 (2008)).

> A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief. This court must, therefore, view a plaintiff's complaint in a light most favorable to him or her in order to determine whether the allegations contained therein could warrant relief under any alternate theory. Consequently, in reviewing the circuit court's order dismissing the plaintiffs' complaint in this

6

> case, our consideration is strictly limited to the
> allegations of the complaint, and we must deem those
> allegations to be true.

Id. at 376, 279 P.3d at 41 (citations and quotation marks omitted).

IV. DISCUSSION

A. Nonjudicial Power of Sale Foreclosure

This wrongful foreclosure action is based on the premise that a foreclosing association of apartment owners, like a mortgagee, must have a power of sale for the unit owner's unit in order to foreclose on a lien against the unit by the nonjudicial power of sale foreclosure procedures set forth in HRS chapter 667.[6] Sakal alleges that the AOAO has not been granted a power of sale, either by contract or by statute, and therefore, the nonjudicial foreclosure of his unit was unlawful, the sale of his unit to Kogen was invalid, and he is entitled to have the sale of the unit declared void, as well as being entitled to other remedies. Appellees do not argue that a power of sale has been directly conferred on the AOAO in the Bylaws. Instead, they argue, variously, that the Bylaws provide the AOAO with broad authority to enforce a lien against the unit/apartment of a delinquent owner, and that the available remedies include nonjudicial power of sale foreclosure pursuant to HRS § 514A-90, HRS § 514B-146(a), or both.

1. Hawaiʻi foreclosure law

We first consider the Hawaiʻi Foreclosures statute, HRS chapter 667 (2016), as Sakal's claim is essentially that the AOAO's foreclosure on the Property was not authorized under Hawaiʻi law. HRS chapter 667 is entitled "Foreclosures" and

---

[6] HRS § 667-1 (2016) defines "Association" by reference to the definition in HRS §§ 421J-2 & 514B-3. HRS § 514B-3 (2006), which is part of the Condominium Property Act, states that "'Association' means the unit owners' association organized under section 514B-102 or under prior condominium property regime statutes." It is undisputed that the AOAO is an "association" within the meaning of HRS chapters 514B and 667. Sakal was a "unit owner," and the Property is a "unit," within the meaning of the applicable statutes. See HRS §§ 667-1 & 514B-3.

governs both judicial and nonjudicial foreclosures in Hawai'i. This statute has undergone significant reorganization and amendment over the years, most notably in 2012. Because the AOAO's nonjudicial power of sale foreclosure on Sakal's unit was conducted in the latter part of 2012, unless otherwise noted, we refer to HRS chapter 667 as it was amended by Act 182 of 2012, which took effect on June 28, 2012.[7]

Part I of HRS chapter 667 now states "General Provisions" and includes HRS § 667-1, entitled "Definitions," which provides definitions that are applicable to the entire chapter. Part IA of HRS chapter 667 now governs "Foreclosure by Action," which is judicial foreclosure. Part II of HRS chapter 667 provides a "Power of Sale Foreclosure Process," which delineates the procedures that must be followed in order to effectuate a nonjudicial power of sale foreclosure, which is a foreclosure that is not conducted under court supervision and pursuant to court orders. Part VI of HRS chapter 667 now provides an "Association Alternate Power of Sale Foreclosure Process," which closely parallels the Power of Sale Foreclosure Process in Part II; however, Part VI is drafted to specifically reflect that the foreclosing party is an association, rather than a mortgagee.

Prior to Act 182 of 2012, Part I of HRS chapter 667 addressed both "Foreclosure by Action" and "Foreclosure by Power of Sale." Within the "old" Part I, HRS § 667-5 (repealed in 2012) provided a procedure through which a mortgagee could foreclose upon a property, without filing suit, in conjunction with the exercise of a power of sale provision contained in a mortgage. Prior to 2012, Part II provided an "Alternate Power of Sale Foreclosure Process," as an elective alternative to the Foreclosure Under Power of Sale provision that existed in HRS

---

[7]     See 2012 Haw. Sess. Laws Act 182, § 69 at 689. Section 69 of Act 182 also contains certain exceptions regarding the effective date that are not relevant here.

§ 667-5 (repealed in 2012). Both of these nonjudicial foreclosure processes were founded upon the existence of a power of sale provision. HRS § 667-40 (2016), which is contained in Part II of HRS chapter 667, specifically provided, and still provides, that a power of sale foreclosure pursuant to Part II can be conducted in certain non-mortgage situations where a law or written document "contains, authorizes, permits, or provides for a power of sale, a power of sale foreclosure, a power of sale remedy, or a nonjudicial foreclosure."[8] Part VI of HRS chapter 667, which provides an alternative power of sale foreclosure procedure specifically tailored to associations, did not exist prior to 2012.

HRS chapter 667 defines "nonjudicial foreclosure" and "power of sale" or "power of sale foreclosure" as follows:

> "Nonjudicial foreclosure" means **foreclosure under power of sale**.
>
> . . . .
>
> "Power of sale" or "power of sale foreclosure" means a nonjudicial foreclosure **when the mortgage contains, authorizes, permits, or provides for a power of sale, a power of sale foreclosure, a power of sale remedy, or a nonjudicial foreclosure**.

HRS § 667-1 (emphasis added).

Notably, HRS § 667-1 specifically defines nonjudicial foreclosure with reference to a power of sale. The Hawai'i Supreme Court has described a power over property as follows:

> A power over property is defined as liberty or authority reserved by, or limited to, a person to dispose of real or personal property for his own benefit, or for the benefit of others, and operating on an estate or interest, vested either in himself or in some other person; the liberty or authority, however, not being derived out of such estate or interest, but overreaching or superseding it, either wholly

---

[8]    Part II of HRS chapter 667 was enacted through Act 122 of 1998, in order to address certain shortcomings in HRS § 667-5 (repealed in 2012). HRS § 667-40, which is applicable only to time share plans, condominium property regimes, and agreements of sale, remains in effect as enacted in 1998 (with subsequent amendments), notwithstanding the addition of Part VI, as well as Part IV, which pertains to the foreclosure of a time share interest where a time share interest mortgage, loan, agreement, or contract contains a power of sale.

> or partially. Such a power has also been defined as an authority enabling one person to dispose of the interest which is vested in another.

Victoria Ward, Ltd. v. Zion Securities Corp., 36 Haw. 614, 630 (1944) (citation and quotation marks omitted).

As noted above, the definition of a nonjudicial foreclosure as a power of sale foreclosure is applicable to the entirety of HRS chapter 667, including Parts II and VI. Thus, any nonjudicial foreclosure under Part II is by definition a foreclosure under a power of sale, and an association's nonjudicial foreclosure under Part VI also is a foreclosure under a power of sale.

Prior to 2012, from the time that Part II was added to HRS chapter 667,[9] the definitions for "power of sale" or "power of sale foreclosure" were stated in HRS § 667-21 (Supp. 2011), which was the first provision in Part II of HRS chapter 667, rather than in HRS § 667-1. In 2011, as part of the first legislative step in a comprehensive review and reform of foreclosures in Hawaiʻi, the definition of "nonjudicial foreclosure" was added to HRS § 667-21, presumably to clarify or confirm that a nonjudicial foreclosure was in fact a foreclosure under a power of sale. 2011 Haw. Sess. Laws Act 48, § 20 at 106-07. All of the HRS chapter 667 definitions, including those previously found in HRS § 667-21, were moved to HRS § 667-1 in 2012. 2012 Haw. Sess. Laws Act 182, § 3 at 636.

The Hawaiʻi Foreclosures statute sets forth the procedures for foreclosure in Hawaiʻi and does not create a right to foreclose, either through a judicial process or a nonjudicial process. For example, Part II of HRS chapter 667, entitled "Power of Sale Foreclosure Process," states that "[t]he power of sale process in this part is an alternative to the foreclosure by action in part IA." HRS § 667-21 (2016) (emphasis added). Similarly, Part VI of HRS chapter 667, entitled "Association

---

[9]    See 1998 Haw. Sess. Laws Act 122, § 1 at 468.

Alternate Power of Sale Foreclosure Process," states that "[t]he power of sale <u>process</u> in this part is an alternative to the foreclosure by action in part IA and the foreclosure by power of sale in part II." HRS § 667-91 (2016) (emphasis added).

In reviewing a nonjudicial foreclosure conducted pursuant to HRS § 667-5 (repealed in 2012), the Hawai'i Supreme Court recognized that no Hawai'i statute, including HRS chapter 667, provides mortgagees the right to proceed by nonjudicial foreclosure; rather, HRS § 667-5 only allows for the creation of a power of sale, if the parties choose to do so, within the four corners of a contract. <u>Santiago v. Tanaka</u>, 137 Hawai'i 137, 155, 366 P.3d 612, 630 (2016), citing <u>Lee v. HSBC Bank USA</u>, 121 Hawai'i 287, 289, 218 P.3d 775, 777 (2009); <u>see</u> <u>also</u> <u>Apao v. Bank of N.Y.</u>, 324 F.3d 1091, 1095 (9th Cir. 2003) (finding that HRS § 667-5 "did not confer the power of sale, but merely authorized the parties to contract for the express terms of foreclosure upon default"). Although <u>Santiago</u>, <u>Lee v. HSBC</u>, and <u>Apao</u> specifically addressed HRS § 667-5 (repealed in 2012), the principles stated therein are equally applicable to nonjudicial power of sale foreclosures conducted under Part II or Part VI of HRS chapter 667. No provision of Part II or Part VI, or any other part of the Foreclosures statute, establishes powers of sale for mortgagees, or associations, or provides for any form of nonjudicial foreclosures in the absence of such powers. A search of the legislative history, as well as the text, of HRS chapter 667 from the time that Part II was enacted in 1998 and through the time that Part VI was enacted in 2012 reveals no legislative purpose or intent to grant any class of persons or entities with a power of sale over the property of others through the amendment of HRS chapter 667. Thus, we conclude that the supreme court's observation that HRS § 667-5 (repealed in 2012) does not provide the right to proceed by nonjudicial foreclosure is applicable to Parts II and VI of HRS chapter 667, as well as to HRS § 667-5 (repealed).

11

Indeed, as noted above, HRS § 667-40 specifically allows an association to conduct a nonjudicial power of sale foreclosure under Part II only where a law or written document "contains, authorizes, permits, or provides for a power of sale, a power of sale foreclosure, a power of sale remedy, or a nonjudicial foreclosure." This language is identical to the HRS § 667-1 definition of a power of sale or power of sale foreclosure, except that HRS § 667-1 refers to a "mortgage" rather than a "law or written document." Part VI of HRS chapter 667 contains neither a grant of a power of sale nor an express limitation like the one set forth in Part II, in HRS § 667-40. However, other requirements stated in Part VI of HRS chapter 667 make clear that the association's power must come from some other provision of law or the association's own controlling documents. For example, HRS § 667-101(a)(1) mandates that "[a]fter the public sale is held, the association shall sign an affidavit under penalty of perjury [s]tating that <u>the power of sale foreclosure was made pursuant to the power of sale provision in the law or association documents</u>[.]" (Emphasis added; format altered).[10]

As stated above, a power of sale is an authority reserved by or granted to a person or entity to dispose of another person's vested property interest, for the first party's own benefit or the benefit of a third party. <u>See</u> <u>Victoria Ward</u>, 36 Haw. at 630. We will not infer that such significant powers have been granted over an entire class of property in the absence of a clear legislative act or, with respect to a particular association or property, by express authorization in a contract entered into by, or otherwise binding on, the affected parties. HRS chapter 667 provides for various alternative <u>processes</u> or procedures through which a lienholder might foreclose on a

_____

[10] There is no reference anywhere in Part VI or elsewhere in HRS chapter 667 to a particular provision of law that in fact grants a power of sale to all associations or any subset of associations.

property, but it does not <u>grant</u> a lienholder association with a power of sale over a unit owner's property.  Rather, such power of sale must otherwise exist in order for the association to lawfully avail itself of the nonjudicial foreclosure alternative.

Thus, we turn to the condominium statutes cited by Appellees.

2.    <u>Hawai'i condominium property regime statutes</u>

HRS chapter 514A applies to all "[c]ondominiums created prior to July 1, 2006, except as provided in . . . sections 514B-22 and 514B-23," and other exceptions not applicable here.  HRS § 514A-1.5(a)(2)(A) (Supp. 2017).[11]  HRS Chapter 514B applies to "all condominiums created within this State after July 1, 2006." HRS § 514B-21 (2006).  HRS § 514B-22 provides that certain enumerated provisions in HRS chapter 514B, including HRS § 514B-146, apply to all condominiums created before July 1, 2006, but "only with respect to events and circumstances occurring on or after July 1, 2006," provided that their application does not "invalidate existing provisions of the declaration, bylaws . . . or be an unreasonable impairment of contract."  HRS § 514B-22 (2006).[12]

As the Complaint alleges that the subject condominium project was developed prior to July 1, 2006, we first consider the relevant provisions of HRS chapter 514A.  The Bylaws allegedly were signed and became effective in 1979.  At that time, and until 1999, HRS § 514A-90 (1993) provided, in relevant part, that "[t]he lien of the association of apartment owners may be <u>foreclosed by action</u> by the manager or board of directors,

---

[11]    HRS chapter 514A was repealed by 2017 Haw. Sess. Laws Act 181 § 2, effective January 1, 2019.

[12]    HRS § 514B-22 was repealed by 2017 Haw. Sess. Laws Act 181 § 4, effective January 1, 2019.  On January 1, 2019, HRS chapter 514A will be repealed and HRS chapter 514B will apply to all condominiums in Hawai'i regardless of their creation date, "provided that such application shall not invalidate existing provisions of the declaration, bylaws, condominium map, or other constituent documents of those condominiums if to do so would invalidate the reserved rights of a developer."  HRS § 514B-21 (Supp. 2017).

acting on behalf of the apartment owners, <u>in like manner as a mortgage of real property</u>." (Emphasis added.) In 1999, this part of HRS § 514A-90 was clarified regarding associations' authority to use nonjudicial or power of sale foreclosure proceedings to enforce liens. <u>See</u> 1999 Haw. Sess. Laws Act 236, §§ 1-7, at 723-30.[13] Pursuant to Act 236, HRS § 514A-90 then provided, in relevant part, that "[t]he lien of the association of apartment owners may be foreclosed by action <u>or by non-judicial or power of sale foreclosure procedures set forth in chapter 667</u>, by the managing agent or board of directors, acting on behalf of the association of apartment owners, <u>in like manner as a mortgage of real property</u>."[14] (Emphasis added.) Thus, the 1999 amendment clarified that associations could avail themselves of HRS chapter 667 nonjudicial or power of sale <u>procedures</u>, like mortgagees. It is clear, however, that mortgagees could conduct a nonjudicial power of sale only if, *inter alia*, the subject mortgage contained a power of sale. <u>See generally</u> HRS § 667-5 (repealed in 2012) and HRS chapter 667, Part II; <u>see also</u>, <u>e.g.</u>, <u>Lee v. HSBC</u>, 121 Hawai'i at 292, 218 P.3d at 780 ("no state statute creates a right in mortgagees to proceed by non-judicial foreclosure; the right is created by contract").

Appellees rely on HRS § 514A-90(a), and the identical provision in HRS § 514B-146(a), by disregarding the language indicating that associations were being given access to nonjudicial power of sale foreclosure <u>procedures</u>, <u>like mortgagees</u>, and that associations were not being granted heretofore non-existent statutory powers of sale, now available

---

[13] The Legislature specifically stated that part of the purpose of Act 236 was to "[c]larify that associations of apartment owners may enforce liens for unpaid common expenses by non-judicial and power of sale foreclosure procedures, as an alternative to legal action[.]" 1999 Haw. Sess. Laws Act 236, § 1 at 723-24.

[14] In the prior year, 1998, the Hawai'i Legislature enacted Part II of HRS chapter 667, creating an alternative power of sale foreclosure process, *i.e.*, an alternative to foreclosure under power of sale pursuant to HRS § 667-5. <u>See</u> 1998 Haw. Sess. Laws Act 122, §§ 1 & 2.

only to associations.[15] The 1999 amendment to HRS § 514A-90 did not purport to enact a blanket grant of powers of sale to all associations over all apartments/units within those associations. There is nothing in the legislative history of Act 236 of 1999 to suggest that a grant of powers of sale was even contemplated. The text of Act 236 of 1999 specifically states that this amendment was intended to <u>clarify</u> that associations could avail themselves of less burdensome <u>procedures</u>, *i.e.*, the alternative power of sale foreclosure procedures enacted the prior year. <u>See</u> 1999 Haw. Sess. Laws Act 236, § 1 at 723-24. As stated earlier, we will not infer that the <u>power</u> to extrajudicially sell another person's property was granted, in the absence of a clear legislative act doing so.

The relevant part of HRS § 514A-90 was further amended in 2012 as part of a major legislative mortgage reform, Act 182, Session Laws of Hawaiʻi 2012. Act 182 was the final result of Act 162, Session Laws of Hawaiʻi 2010, which created a Mortgage Foreclosure Task Force (**Task Force**) to study mortgage foreclosure policies and to recommend improvements. <u>See</u> 2012 Haw. Sess. Laws Act 182, § 1 at 630. In 2011, the Task Force's focus was divided into three major issues, which were addressed in the first instance by groups formed within the Task Force. Group #2 of the Task Force was tasked with "[m]atters involving condominium and other homeowner associations, including association liens and the collection of unpaid assessments." <u>Final Report of the Mortgage Foreclosure Task Force to the Legislature for the Regular Session of 2012</u> (December 2011), <u>available at</u> <u>http://lrbhawaii.info/reports/legrpts/2012/mort.pdf</u> at 6 (**Final**

---

[15] In their references to HRS §§ 514A-90, 514B-146, and chapter 667, Appellees fail to address the statutory references to "in a like manner as a mortgage of real property," the subsequent developments in the statutes, the definitions of "nonjudicial foreclosure," "power of sale" and "power of sale foreclosure," or provide any support for their assertion that HRS §§ 514A-90 & 514B-146 were intended to confer powers of sale upon associations, rather than provide associations with access to a power of sale foreclosure process.

**Task Force Report).**[16] The Final Task Force Report was 288 pages long and included, *inter alia*, descriptive summaries of the Task Force's substantive recommendations, as well as presented the recommendations in standard legislative bill format. Each part of the proposed legislation was preceded by a Comment, which briefly explained what was recommended and why the Task Force was recommending that particular proposed legislation. In addition, the Final Task Force Report included certain Minority Reports from Task Force members who remained concerned about how matters were resolved or left unresolved due to different views among the Task Force members. See generally id.

Most notably, Group #2 of the Task Force recommended that the Legislature "[a]mend chapter 667 by adding a new part to establish an alternate power of sale process specifically for condominium and other homeowner associations and modeled after the process set forth in part II of chapter 667, as amended by the recommendations of the task force." Id. at 17 & 36-53. In recommending related amendments to HRS § 514A-90, the Task Force highlighted limits to be placed on association liens. Id. at 54. Without comment, with respect to the part of HRS § 514A-90 that is most relevant here, the Task Force recommended deleting "in like manner as a mortgage of real property." Id. at 55.[17] It is clear that, with the addition of a new part to HRS chapter 667 (Part VI) establishing an alternative power of sale process specifically for associations, which was modeled after but not identical to the process set forth in Part II of HRS chapter 667, the reference to "like manner as a mortgage of real property" became superfluous, if not confusing. This Task Force

---

[16] The cited page numbers reflect the .pdf pages, rather than the page numbers assigned within the Final Task Force Report.

[17] Pursuant to Act 182, HRS § 514A-90(a) (Supp. 2017) now simply provides, in relevant part, that "[t]he lien of the association of apartment owners may be foreclosed by action or by nonjudicial or power of sale foreclosure procedures set forth in chapter 667, by the managing agent or board of directors, acting on behalf of the association apartment owners."

recommendation was adopted in Act 182. See 2012 Haw. Sess. Laws Act 182, § 9 at 653. However, the Task Force's recommended amendment to HRS § 514A-90 did not purport to enact a blanket grant of powers of sale to all associations over all apartments/units within those associations. There is nothing in the extensive Final Task Force Report or the legislative history of Act 182 to suggest that the authority to conduct a power of sale foreclosure in the absence of an existing power of sale was ever contemplated. Thus, we conclude that HRS § 514A-90 does not authorize an association to conduct a nonjudicial or power of sale foreclosure other than as provided in HRS chapter 667, which in turn does not authorize a nonjudicial power of sale foreclosure absent an otherwise existing power of sale.

As noted above, HRS § 514B-146 generally applies to all condominiums, including those created before July 1, 2006, with respect to events occurring thereafter. See HRS § 514B-22. HRS § 514B-146 was enacted in 2004 and mirrored HRS § 514A-90. 2004 Haw. Sess. Laws Act 164, § 2 at 756. In 2012, when Part VI was added to HRS chapter 667, HRS § 514B-146 was amended in parallel to the above-referenced amendment to HRS § 514A-90. Thus, we conclude that, like HRS § 514A-90, HRS § 514B-146 does not authorize an association to conduct a nonjudicial or power of sale foreclosure other than as provided in HRS chapter 667, which does not authorize a nonjudicial or power of sale foreclosure absent a power of sale.

Finally, Sakal correctly notes that other jurisdictions that have granted a power of sale statutorily have done so explicitly; and, Sakal argues that, had the Hawaiʻi Legislature intended to grant such powers, it would have specifically said as much. See, e.g., D.C. Code § 42-1903.13(c)(1) (Westlaw through 2017 legislation) ("The unit owners' association **shall have the power of sale** to enforce a lien for an assessment against a condominium unit if an assessment is past due. **By accepting a deed to a condominium unit, the owner shall be irrevocably deemed**

17

**to have appointed** the chief executive officer of the unit owners' **association as trustee for the purpose of exercising the power of sale provided for herein.**") (emphasis added); Minn. Stat. § 515B.3-116(h)(1) (2017) ("[T]he association's lien may be foreclosed in a like manner as a mortgage containing a power of sale pursuant to chapter 580, or by action pursuant to chapter 581. The **association shall have a power of sale** to foreclose the lien pursuant to chapter 580.") (emphasis added); Tex. Prop. Code § 82.113(d) (Westlaw through 2013 legislation) ("**By acquiring a unit, a unit owner grants to the association a power of sale** in connection with the association's lien.") (emphasis added); N.C. Gen. Stat. § 47F-3-116(f) (Westlaw through 2013 legislation) ("[T]he association, acting through the executive board, may foreclose a claim of lien in like manner as a mortgage or deed of trust on real estate under power of sale, as provided in Article 2A of Chapter 45 of the General Statutes. . . . **The association shall be deemed to have a power of sale for purposes of enforcement of its claim of lien.**") (emphasis added). Appellees point to no such statutory language in Hawai'i law and we find none.[18]

---

[18] We recognize that our holding does not harmonize every aspect of the statutes affecting nonjudicial power of sale foreclosures by associations. For example, in HRS § 667-1, "power of sale" or "power of sale foreclosure" is defined in terms of a "mortgage" that "contains, authorizes, permits, or provides for a power of sale, a power of sale foreclosure, a power of sale remedy, or a nonjudicial foreclosure," whereas in HRS § 667-40 and certain provisions of Part VI of HRS chapter 667, refers to "a law or written document" that "contains, authorizes, permits, or provides for a power of sale, a power of sale foreclosure, a power of sale remedy, or a nonjudicial foreclosure." If a law provided powers of sale to all associations, there would be no need to reference other written documents; however, the language suggests that such a law might exist, but we found none. We note, however, that the nonjudicial power of sale procedures in Part II of HRS chapter 667 are expressly made available to associations through HRS § 667-40, where such powers exist, but other parts of Part II are an ill fit for associations. See, e.g., HRS § 667-32(a)(1) (requiring "the foreclosing mortgagee" to file an affidavit under penalty of perjury stating, *inter alia*, "that the power of sale foreclosure was made pursuant to the power of sale provision in the mortgage"). Especially in light of other aspects of Part II of HRS chapter 667 that cannot be read literally as to association foreclosures, we conclude that the ambiguous references to "a law or written document" is too thin a reed on which to support a statutory power of sale. Nevertheless, we delved

(continued...)

3.    The Bylaws

On appeal, Kogen contends that Article VI of the Bylaws, as alleged in the Complaint, provides the AOAO with the authority to use "any other remedies that the [AOAO] may have," which Kogen argues includes the remedy of nonjudicial foreclosure.  The AOAO points to the part of Article VI of the Bylaws stating that "the [AOAO] shall have all remedies provided in Section 514A-90, HRS."  Section 4 of Article VI of the Bylaws, as alleged in the Complaint, states as follows:

> In the event of a default or defaults in payment of any such assessment or assessments <u>and in addition to any other remedies the [AOAO] may have</u>, the [AOAO] may enforce each such obligation as follows:
> (a) By suit or suits to enforce such obligations. . .
> (b) . . . [T]he [AOAO] may file a claim of lien against the Apartment of such delinquent Owner. . . . Upon recordation of a duly executed original or copy of such claim of lien with the Office of the Assistant Registrar of the Land Court of the State of Hawaii, <u>the [AOAO] shall have all remedies provided in Section 514A-90, HRS</u>.

(Emphasis added).

Addressing the interpretation of condominium bylaws, the supreme court has stated:

> Indeed, bylaws generally establish the rules governing the condominium.  <u>See</u> <u>Raines v. Palm Beach Leisureville Cmty. Ass'n</u>, 413 So.2d 30, 32 (Fla.1982) ("[A] condominium association derives its powers, duties, and responsibilities from [Florida Statutes] chapter 718 and from the association's declaration of restrictions and bylaws.");  <u>Bradford Square Condo. Ass'n v. Miller</u>, 258 Ga.App. 240, 573 S.E.2d 405, 409 (2002) ("The condominium instruments, including the bylaws and the sales agreement, are a contract that governs the legal rights between the [a]ssociation and unit owners.");  <u>Chapman Place Ass'n, Inc. v. Prokasky</u>, 507 N.W.2d 858, 863 (Minn.Ct.App.1993) ("[T]he condominium act, in conjunction with the [d]eclaration and the [a]ssociation's by-laws, governs the rights of the [a]ssociation and condominium unit owners.");  <u>Lion Square</u>

---

¹⁸(...continued)
further into the history of statutory lien rights of associations, from when they were first enacted as part of the first Horizontal Property Act in 1961, when they were amended in 1963, and through the present.  <u>See</u> 1961 Haw. Sess. Laws Act 180, § 15 at 276; 1963 Haw. Sess. Laws Act 101, § 22 at 88;  HRS § 514-24(a) (1968) (repealed in 1977); HRS §§ 514A-90 and 514B-146.  Nothing in the legislation or legislative history of Hawai'i condominium law supports a conclusion that, at any time, the Legislature enacted or intended to enact a statute granting powers of sale over all condominiums in the State to their respective associations.

Phase II & III Condo. Ass'n v. Hask, 700 P.2d 932, 934 (Colo.Ct.App.1985) ("A condominium association may exercise its powers only within the constraints of its condominium declaration and bylaws.").

Ass'n of Apartment Owners of Maalaea Kai, Inc. v. Stillson, 108 Hawai'i 2, 9, 116 P.3d 644, 651 (2005).

Contracts and agreements must be construed as a whole, not from any particular word, phrase, or clause. Santiago, 137 Hawai'i at 155, 366 P.3d at 630 (citing Ching v. Hawai'ian Rests., Ltd., 50 Haw. 563, 565, 445 P.2d 370, 372 (1968)). Ambiguity is construed against the drafter. Id. (citing Luke v. Gentry Realty, Ltd., 105 Hawai'i 241, 249, 96 P.3d 261, 269 (2004)).

In Santiago, the supreme court examined whether a power of sale was contained in a mortgage, in conjunction with a nonjudicial power of sale foreclosure conducted pursuant to HRS § 667-5 (repealed in 2012). Id. at 155-56, 366 P.3d at 630-31. The subject mortgage in Santiago stated that, upon a default on the mortgage, the lender may foreclose on the mortgage by court proceeding or "as now or then provided by law, by advertisement and sale of the mortgaged property . . . at public auction[.]" Id. at 155, 366 P.3d at 630. The supreme court found this phrase ambiguous when read in conjunction with HRS § 667-5, explaining that, *inter alia*, "[t]he plain language of the Mortgage creates a chicken-and-egg situation where it is not clear whether the power of sale is created within the document (as required by the statute) or created within the statute (as contemplated by the Mortgage)." Id. Construing the ambiguity against the drafter, the supreme court concluded that the subject mortgage only allowed nonjudicial foreclosure as provided by law, that the applicable foreclosure law required that a power of sale be contained in a mortgage, and, as there was no power of sale in the mortgage, the nonjudicial foreclosure sale in that case was unlawful. Id. at 155-56, 366 P.3d at 630-31.

Here, like in <u>Santiago</u>, the Bylaws generally refer to the remedies provided under the law, namely HRS § 514A-90. Because, as discussed above, HRS § 514A-90 and HRS § 514B-146 do not grant a power of sale to the AOAO, and the applicable nonjudicial power of sale foreclosure laws require a power of sale provision be provided by law or in the governing documents, the reference to HRS § 514A-90 creates a similar "chicken-and-egg" problem as in <u>Santiago</u>. We construe the ambiguity against the drafter - the AOAO - and conclude that the Bylaws do not unambiguously give the AOAO a power of sale over its units and, as discussed above, HRS §§ 514A-90 and 514B-146 allow associations to utilize nonjudicial power of sale foreclosure procedures, as well as to proceed by judicial action, but do not grant associations powers of sale over all condominium units. Thus, the AOAO's nonjudicial power of sale foreclosure of Sakal's unit was not authorized by the Bylaws.

Accordingly, as neither the Bylaws nor the statutes relied on by Appellees contain a grant of a power of sale, we conclude that the Circuit Court erred in concluding that Sakal failed to state any legally-cognizable claim for relief based on the theory that the AOAO's nonjudicial foreclosure sale of the Property was unauthorized and unlawful.

B.   <u>HRS § 667-102</u>

Appellees also argue, and the Circuit Court further concluded, that HRS § 667-102(b) (2016) bars Sakal's claims because they were not made before the Affidavit and the Quitclaim Deed were filed. That section of Part VI of the Foreclosures statute provides, in relevant part:

> **§ 667-102 Recordation of affidavit, conveyance document; effect.** (a) The affidavit required under section 667-101 and the conveyance document shall be recorded no earlier than ten days after the public sale is held but not later than forty-five days after the public sale is held. The affidavit and the conveyance document may be recorded separately and on different days. . . .
>
> (b)   <u>When both the affidavit and the conveyance document are recorded:</u>

(1)     <u>The sale of the unit is considered completed;</u>

(2)     <u>All persons claiming by, through, or under the unit owner and all other persons having liens on the unit junior to the lien of the association shall be forever barred of and from any and all right, title, interest, and claims at law or in equity in and to the unit and every part of the unit, except as otherwise provided by law;</u>

(3)     The lien of the association and all liens junior in priority to the lien of an association shall be automatically extinguished from the unit; and

(4)     The purchaser shall be entitled to immediate and exclusive possession of the unit.

HRS § 667-102(a) & (b) (emphasis added).

Sakal argues, however, that he is not barred from asserting his right to title and interest in the subject property based on the "except as otherwise provided by law" clause in HRS § 667-102(b)(2). Relying principally on the supreme court's decision in <u>Lee v. HSBC</u>, Sakal contends that for a nonjudicial foreclosure sale to be valid, the foreclosing party must strictly comply with the requirements of the subject contract and statute. With respect to his claim to the subject Property, we reject Sakal's contention. <u>Lee v. HSBC</u> is distinguishable. In that case, the plaintiff was the high bidder at a foreclosure auction. 121 Hawaiʻi at 288, 218 P.3d at 776. However, prior to the auction (unbeknownst to the lender's attorney), and prior to the auctioned property being conveyed, the mortgagors cured their delinquency on the mortgage loan. <u>Id.</u> Under the power of sale clause in the subject mortgage, the mortgagee could only exercise its power of sale if the mortgage loan was in default and, therefore, the sale was invalid pursuant to HRS § 667-5, which required the mortgage agreement to be in breach in order to conduct a nonjudicial power of sale foreclosure. <u>Id.</u> at 290-91, 218 P.3d at 778-79. Accordingly, the supreme court held that the

nonjudicial foreclosure sale was void and unenforceable by the plaintiff/high bidder.  Id. at 292, 218 P.3d at 780.[19]

The most significant distinction between the case at bar and Lee v. HSBC is that the conveyance of the subject property to the high bidder in Lee v. HSBC had not yet occurred. We also recognize that the nonjudicial power of sale foreclosure sale in Lee v. HSBC was conducted pursuant to HRS § 667-5 (repealed in 2012) and not Part II of HRS chapter 667.  Even if the nonjudicial power of sale foreclosure had been conducted pursuant to Part II, the recordation referenced in HRS § 667-33 – which is the exact parallel provision in Part II of HRS chapter 667 that HRS § 667-102 was modeled after – had not yet occurred.[20]  Thus, Lee v. HSBC does not establish or explicate an exception to HRS § 667-33 and HRS § 667-102.  We reject, however, the AOAO's assertion that Lee v. HSBC is irrelevant solely because it involved a mortgage foreclosure, rather than an

---

[19]    The supreme court concluded that the plaintiff/high bidder was only entitled to reimbursement of his down payment with interest.  Lee v. HSBC, 121 Hawai'i at 296, 218 P.3d at 784.

[20]    HRS § 667-33 (2016) provides, in relevant part:

§ 667-33  Recordation of affidavit, conveyance document; effect.  (a) The affidavit required under section 667-32 and the conveyance document shall be recorded no earlier than ten days after the public sale is held but not later than forty-five days after the public sale is held. The affidavit and the conveyance document may be recorded separately and on different days. . . .

(b)    When both the affidavit and the conveyance document are recorded:

(1)    The sale of the mortgaged property is considered completed;

(2)    All persons claiming by, through, or under the mortgagor and all other persons having liens on the mortgaged property junior to the lien of the foreclosing mortgagee shall be forever barred of and from any and all right, title, interest, and claims at law or in equity in and to the mortgaged property and every part of the mortgaged property, except as otherwise provided by law;

23

association lien foreclosure. As discussed above, Appellees have cited no authority for the proposition that the Legislature intended to provide associations with nonjudicial foreclosure powers other than pursuant to a power of sale, like mortagees, and we find none. Indeed, our review of the development of the nonjudicial foreclosure laws applicable to associations confirms that the Legislature intended to provide associations with essentially the same nonjudicial foreclosure procedures available to mortgagees, which were then better tailored for associations in Act 182 with the provisions now set forth in Part VI of HRS chapter 667.

Turning back to HRS § 667-102, set forth above, we conclude that the statutory language is clear and unambiguous. Having failed to challenge the nonjudicial power of sale foreclosure of the Property prior to the recordation of the Affidavit and the Quitclaim Deed, Sakal is now barred by HRS § 667-102(b)(2) from any claim to the Property itself. The Hawai'i Supreme Court has upheld a similar limit contained in HRS § 501-118 (2006), which bars any challenge to the transfer of title of foreclosed land court property after the issuance of a new TCT. See Aames Funding Corp. v. Mores, 107 Hawai'i 95, 110 P.3d 1042. Although not directly applicable here, because no new TCT was issued upon the conveyance of the Property to Kogen, Aames supports the enforceability of a bar to a challenge to a completed transfer of title such as the one in HRS § 667-102.[21]

The AOAO appears to further argue that HRS § 667-102 operates as a complete bar to any claim by Sakal for wrongful foreclosure, and not just Sakal's claim to title to the Property. This argument is without merit. HRS § 667-102 plainly bars any claim "in and to the unit and every part of the unit." It does not bar, generally, all claims arising out of wrongful and unlawful nonjudicial foreclosure by associations. The supreme

---

[21] On appeal, Kogen no longer claims that HRS § 501-118 and the holding in Aames are directly applicable to bar Sakal's claims.

court recently recognized the viability of wrongful foreclosure claims arising out of an allegedly unlawful nonjudicial power of sale foreclosure, albeit based on alleged failures to comply with requirements not at issue in this case. See Hungate v. Law Office of David B. Rosen, 139 Hawai'i 394, 402-04, 391 P.3d 1, 9-11 (2017); see also Santiago, 137 Hawai'i at 158, 366 P.3d at 633 (where a nonjudicial foreclosure sale is wrongful, but the sale to an innocent purchaser for value has been completed, an action at law for damages is generally the appropriate remedy). Here, Sakal's complaint seeks, inter alia, "damages resulting from the wrongful nonjudicial foreclosure and subsequent eviction of Mr. Sakal from his home." It appears that Sakal has stated a claim for wrongful foreclosure against the AOAO upon which some relief may be granted. Thus, we conclude that the Circuit Court erred in dismissing Sakal's complaint in its entirety against the AOAO.[22]

V.    CONCLUSION

For the reasons stated above, the Circuit Court's August 5, 2015 Judgment is affirmed in part and vacated in part. We affirm the Circuit Court's dismissal of all claims against Kogen, as well as all claims, at law or in equity, against the AOAO that seek any right, title, or interest in and to the Property. We vacate the Circuit Court's dismissal of Sakal's claims for damages against the AOAO arising out of wrongful

---

[22]    Although arguably sufficient for notice pleading standards, Sakal's claim for damages is not particularly clear. However, Sakal does not argue, and cites no authority for the proposition, that he can bring a wrongful foreclosure claim against the buyer of the foreclosed property. Indeed, in light of HRS § 667-102(b)(4), cited above, Kogen's actions in evicting Sakal from the Property were authorized by statute and not wrongful.

foreclosure and remand this case for further proceedings consistent with this Opinion.

On the briefs:

Gary Victor Dubin
Frederick J. Arensmeyer
for the Plaintiff-Appellant

Robert E. Chapman
Carlos D. Perez-Mesa, Jr.
Mary Martin
(Clay Chapman Iwamura Pulice & Nervell)
for Defendant-Appellee
ASSOCIATION OF APARTMENT OWNERS
   OF HAWAIIAN MONARCH

Jeffrey P. Miller
for the Defendant-Appellee
JONAH KOGEN